SPRINGS, HEATH & CO. v. SOUTH BOUND R. R. CO.

1. EXCEPTION.—A party objecting on the trial to the introduction of a memorandum as evidence, cannot in this court change his objection to the use of it by witness to refresh his memory, and have such latter objection considered by this court.

2. EVIDENCE.—It is not error to admit in evidence a statement made out by a public cotton weigher, at the time of weighing, of the exact weight of each bale of cotton weighed by him, when the weight of the cotton is an issue in the case.

3. EVIDENCE—MEMORANDUM—WITNESS.—A witness may refresh his memory from a memorandum made out by another, if, after inspection, he can speak of his own knowledge and recollection.

4. NONSUIT is improper where there is any evidence on the issues raised.

5. IBID.—It is proper to refuse a motion for *nonsuit* in an action for damages for negligence in handling cotton, where there is testimony to show that damaged cotton had to be picked from the bales, even where there was no evidence as to damage in quality, and where the weights, after picking, exceeded the weights on bills of lading, when it is shown that *weights* on the bills of lading were *estimated*.

6. RAILROAD—LIABILITY.—Railroads cannot limit their liabilty for negligence by any stipulations in their bills of lading.

7. CHARGE.—It is not error in a Circuit Judge, on the trial of a case for negligence in storing cotton in the State of Georgia, to say to the jury: "Did they put it in a place of safety when it reached Savannah? Did they carefully keep the cotton—preserve it? If they did not, they, under the laws of the State of Georgia, would be liable for any damages resulting."

8. IBID.—In view of the laws of Georgia, that the railroad was required to safely keep freight until demand of the shipper, it was proper for the Circuit Judge to refuse to charge, as matter of law, whether or not two months delay on the part of the plaintiff after the arrival of the goods in Savannah was a reasonable time for the delivery of the goods.

Before EARLE, J., Columbia, spring term, 1895. Affirmed.

Action by Springs, Heath & Co. against the South Bound Railroad for damages to a lot of cotton on account of negligent handling. Commenced February 15, 1894. Judgment for plaintiff.

Defendant appeals, upon the following exceptions:

1. Because his honor overruled defendant's objection to the *fourth* interrogatary propounded to the witness, Ober.

2. Because his honor overruled defendant's objection to the use by the witness, Ober, of the paper referred to in the *fourth* interrogatory to refresh his memory, because it does not appear by whom the slip or statement referred to was made out.

3. Because his honor overruled defendant's objection to the introduction of the papers marked No. 1 and No. 2, attached to the deposition of the witness, Albert Rhett.

4. Because his honor, against the objection of the defendant, allowed the witness, LeRoy Springs, to make use of the statement furnished him by Albert G. Ober to refresh his memory, and allowed him to testify from said paper.

5. Because his honor refused the motion of the defendant to strike out the testimony of LeRoy Springs upon that subject.

6. Because his honor, upon the motion for a nonsuit, should have held that it was not shown to have been the duty of the defendant company to store the cotton in question in a warehouse, and should have granted the nonsuit.

7. Because his honor, upon the motion for a nonsuit, should have held that there was no evidence of any negligence on the part of the defendant company in the holding of the cotton in question in the manner in which it was proven to have been held, and should have granted the nonsuit.

8. Because his honor, upon the motion for a nonsuit, should have held that the defendant company, upon transporting the cotton in question to the city of Savannah, had a right to assume that it would be called for upon its arrival, and that it was under no obligation to store the cotton in a covered warehouse, and should have granted the nonsuit.

9. Because, upon the motion for a nonsuit, his honor should have held that, after the arrival of the cotton in the city of Savannah and the lapse of a reasonable time to remove the same, the cotton remained at the risk of the plaintiffs, and that the defendant is not responsible for any

damages resulting from the operation of natural causes on account of such delay, and should have granted the nonsuit.

10. Because, upon the motion for a nonsuit, his honor should have held that there was no evidence to show that the cotton was damaged in quality by its exposure to the weather while in the custody of the defendant, and should have granted the nonsuit.

11. Because, upon the motion for a nonsuit, his honor should have held that there was no evidence that the cotton in question was damaged in quality by its exposure to the weather, and that there is evidence showing that the plaintiffs received payment for more cotton than was actually shipped; therefore, that the picking of the cotton in Baltimore, testified to by the witnesses, Ober and Rhett, resulted in no loss by the plaintiffs, and should have granted the nonsuit.

12. Because his honor charged the jury in effect that the stipulation in the bills of lading introduced in evidence, that "all articles of freight, on arrival at the place of destination, are at the risk and expense of the owner," does not exempt the defendant from damages resulting to the cotton in question after its arrival in the city of Savannah and the lapse of a reasonable time for its removal.

13. Because his honor charged the jury as follows, to wit: "Did they put it in a place of safety when it reached Savannah? Did they safely keep the cotton—preserve it? If they did not, they, under the laws of the State of Georgia, would be liable for any damages resulting."

14. Because his honor charged the jury as follows, to wit: "If, in the first place, the railroad had been negligent— and they have been, unless they shipped and delivered this cotton, using that care necessary to preserve it in good condition—if they have been negligent, then how much have they damaged the plaintiffs by their negligence?"

15. Because his honor, upon his attention being called to the point, refused to charge the jury as to whether or not two months' delay on the part of the plaintiffs after the

arrival of the goods in Savannah was a reasonable time for the delivery of the goods.

16. Because his honor refused defendant's motion for a new trial, based upon the ground that the evidence had shown no damages whatever resulting to the plaintiffs from the alleged negligence of the defendant.

*Messrs. C. J. C. Hutson* and *Lyles & Muller*, for appellant.

*Messrs. Abney & Thomas*, contra.

March 9, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE.    The plaintiffs are cotton buyers in this State, and, as such, shipped over the defendant railroad to the city of Savannah, Georgia, 171 bales of cotton, in two separate lots—one lot containing 110 bales and the other 61 bales, arriving at destination about 28th February, 1893.

The defendant stood the cotton bales up on the end of the bales, exposed to the weather, from 28th February, 1893, until the 23d of April, 1893, at which time they were shipped by the steamer D. H. Miller to the city of Baltimore, where they arrived on 25th April, 1893. The cotton was sold to Albert G. Ober, of that city. When weighed by Albert R. Rhett, a public weigher of that city, the heads of bales were found to be wet with water; the 110 bales of cotton, which weighed 57,045 pounds, had picked therefrom 1,823 pounds of cotton which was spoiled by water, thus leaving 55,222 pounds. The 61 bales of cotton, which weighed 30,439 pounds, had picked from them, as spoiled by water, 1,382 pounds, thus leaving 29,057 pounds. The first lot sold at 8⅝ cents per pound. The second lot was sold at 8½ cents per pound. The gross loss was $319.29, which was reduced to $275.64 by a sale of the damaged cotton for $43.65-100. Hence the plaintiffs sued the defendant railroad company to recover from it the sum of $275.64, as injury to the 171 bales of cotton, which they alleged resulted to their property from their negligence and carelessness in exposing the cotton to the weather for nearly

two months.   The  answer  admitted the shipment over its
road  by  the  plaintiffs,  but  alleged  that  they  observed  due
care  of  the  cotton  after  it  reached the city of Savannah.   At
the  trial, which  took  place  at  the spring term, 1895, of the
Court of Common Pleas for Richland County, in the  State
of  South  Carolina,  before  his  honor,  Judge  Earle,  and  a
jury, a verdict was rendered for the plaintiffs for $259.61-100.
After  entry  of  judgment,  the  defendant  appealed,  and  the
sixteen  grounds  of  appeal  will  be  reported.    We  will  not
dispose  of  these  grounds  *seriatim*,  but  will  consider  them
in  three  groups:    First.  All  of  them  that  allege  error  in
the  admission  of  testimony.    Second.  The  refusal  of  the
Circuit  Judge  to  grant  a  nonsuit.    Third.  The  alleged
errors in the charge of the Circuit Judge.

The  appellant  alleges  that  the  Circuit  Judge  was  in  error
in  overruling  his  objection  to  the  fourth  interrogatory  of
plaintiffs  to  their  witness,  Albert  G.  Ober,  which
was  taken  by  commission  in  the  city  of  Baltimore,
Maryland.   The  interrogatory  referred  to  was  in
these  words:  "4.  Please  examine  the  attached  slip,  and
please state if it was  made  out  at  the time by you, and if
it correctly represents the  claim for  damages on the cotton
you  purchased from  Heath, Springs & Co.?"  This is the
"slip" referred to:

"*Claim Damages on Wet Cotton.*

Albert G. Ober, May 14, 1893.

Cotton spots and futures, 415 Water street, Baltimore.

*Messrs. Heath, Springs & Co.*                *Dr.*

S. Y. L. 110 bales cotton, original
    weights..............................57,045 lbs.
Reweight after  picking...........55,222 lbs.

Allowance for damages............ 1,823 lbs., at 8⅝c., $157.24
G. E. D. 61 bales, original weight 30,439 lbs.
Reweight after picking........... 29,057 lbs.

1,382 lbs., at 8½c.,  117.47

Extra labor and weighing for picking 171 b. c.
  above...................................................    44.58

                                     *Cr.*            $319.29
By sale of pickings................................ ........    43.65

                                                     $275.64

Received of Merchant's and Miner's Transportation Company, April 25, 1893, from Savannah, with damages on end of bales, which necessitated picking to put in order. Albert G. Ober."

Mr. Lyles, as attorney for defendants, in presenting his objection to the court, said: "The point we make is, whether a memorandum, which may be used for the purpose of refreshing the memory, can itself become evidence in the cause?" The court: "I cannot understand the force of the objection without knowing how the witness answered." Mr. Lyles: "He answers: 'The slip or statement was made out May 10, 1893, and represents correctly damages on cotton purchased from Heath, Springs & Co., and paid by them.'" The court: "He must speak from his memory; it must be the witness speaking and not the paper." Mr. Lyles: "That is the point we make." Mr. Abney, as attorney for plaintiffs: "He says that is a correct representation, that it is his knowledge of it put down in that paper." The court: "I think it competent." We have quoted the language of the colloquy to show that the objector himself changed the point he made from an objection to a slip as itself evidence to the *use* of it by the witness. Clearly, from the standpoint as to the *use* to be made of it, the Circuit Judge was in entire accord with our decisions and text-writers on this point. See the carefully prepared opinion of this court, announced by the present chief justice in the case of the *State* v. *Collins*, 15 S. C., 376, 377, citing, *inter alia*, 1 Starkie on Ev., 128; 2 Russell on Crimes, 622; 1 Greenleaf on Ev., 436. After counsel has pointedly and advisedly submitted his objection to the paper, namely, to

refresh the memory of witness, and thereafter that he shall be required to speak of his own knowledge, he cannot, on appeal, shift his position to an objection to the paper itself. The first and second grounds of appeal must be dismissed.

In his third exception the appellant objects to the introduction of the papers marked No. 1 and No. 2, attached to the deposition of the witness Albert, R. Rhett. These papers, No. 1 and No. 2, contain a statement signed by Albert R. Rhett, as public weigher, of the exact weight of each of the 171 bales of cotton after the spoiled cotton had been picked off of the ends. In the answer to the interrogations propounded to this witness, he states that, as public weigher, he weighed each one of these 171 bales of cotton; that he signed the papers himself, in his official capacity as public weigher, and that of his own knowledge he knows that they correctly set forth the weight of such bales of cotton. We cannot see how this testimony can be objected to under these circumstances. The object of all inquiry is truth. Such being the case, the results of the labors of a public weigher to ascertain the weights of 171 bales of cotton, so that each bale of the cotton so weighed may be identified, must of necessity appear from the contemporaneous records kept by such officer with the fact of his weighing such cotton. This ground of appeal is dismissed.

The fourth and fifth exceptions relate to the testimony of the witness, LeRoy Springs, when he referred to the statement of the witness, Albert G. Ober, in order to refresh his memory, as to the price at which he sold these 171 bales of cotton, in the city of Baltimore. It seems to us that this matter is disposed of by what we have said in considering the first ground of appeal. It is clearly in keeping with the decision of this court in *State v. Collins, supra.* If the witness has not made the memorandum himself, he must, after an inspection of it, be able to speak of his own knowledge. This comes, after all, from an association of ideas. A witness called suddenly to speak

of transactions with others in the past, possibly of many details making up the transaction, has, for the moment, forgotten the circumstances, but the instant his memory thereof is stirred, a full consciousness of these transactions as verities of his own knowledge comes back to him.   So it was with Mr. Springs in this case.   With the multitude of similar transactions in cotton, he was not able, of himself, to speak of the price at which he sold the cotton; but the moment he saw Ober's account of such sales, he knew, of his own knowledge, what the prices were, and having testified on this occasion that his knowledge, after refreshing his memory by a sight of the paper prepared by Ober at the time of these transactions, was positive, and existed apart from the paper, his testimony was competent, and should not have been struck out.   This disposes of the fourth and fifth grounds of appeal.

Secondly.  We will now examine the different phases of the motion for a nonsuit.   Whether the defendant should have stored plaintiffs' cotton in a warehouse and did not so act, was not the point on which defendant's liability was made to depend.   It was in evidence that cotton could be protected from injury incident to exposure in the weather, by other methods than being placed in a warehouse, namely, by being moved about from place to place after a rainfall. So the sixth ground of appeal, covering this matter, must be overruled.

The tenth exception sets out, that as the testimony showed no injury to the quality of plaintiff's cotton, nonsuit was proper.   We cannot agree to this view.   Injury to quality is one thing, injury by reducing the quantity is another thing, and as there was testimony as to injury to the cotton in question in the matter of quantity, nonsuit was not proper.

The seventh, eighth, and nineth exceptions may be discussed together.   The evidence was direct and positive that the plaintiff's cotton was kept by the defendant in open air from the 28th February, 1893, until the 22d April, 1893,

and it was admitted that the performance of the contract for delivery of the cotton was to be within the State of Georgia. The Circuit Judge held that the laws of Georgia on this subject were to govern the parties as to the delivery, and to this ruling there is no exception. The defendant introduced in evidence a decision of the Supreme Court of the State of Georgia, holding that defendant was not required to notify plaintiffs of the arrival of their cotton in the city of Savannah, but that decision did hold that such defendant was required to keep the cotton safely. The Circuit Judge, when he came to pass upon the ground for nonsuit, therefore, had this law of the place of delivery before him. When he declined the nonsuit, he felt, and virtually decided, that there was some testimony before the jury on the want of due care—of negligence—by the defendant, and hence he could not grant the nonsuit, for the jury must pass upon the facts which are proved, in order to establish negligence. All these grounds of appeal must be dismissed.

The appellant, by its eleventh ground of appeal, insists, because there was no evidence of injury to the quality of the cotton, and also that the testimony showing that plaintiffs actually by weight sold more cotton than they shipped, nonsuit should have been granted. Now, it is not for a moment contended that any other cotton than the plaintiffs' 171 bales, shipped over defendant's railroad, and reshipped to Baltimore, was sold in Baltimore by plaintiffs to Albert G. Ober. It was none of defendant's business what the cotton—the 171 bales—weighed in Baltimore; it certainly had to be picked of injured cotton after it reached the latter city, and to that extent the quantity of plaintiffs' 171 bales of cotton was diminished. What the defendant means to suggest is, that when the weights of the 171 bales of cotton on the bills of lading issued by it to the plaintiffs is contrasted with the weights of such cotton in the city of Baltimore, there *appears* to be 600 pounds gain to the plaintiff in such weights. But

all this *appearance* is made to vanish by the testimony, which is, that the railroad, defendant here, does not enter on its bills of lading the *actual* weight of cotton, but only its *estimated* weight. Let the ground of appeal be dismissed.

The twelfth, thirteenth, and fourteenth grounds of appeal relate to the charge of the judge. In the twelfth it is claimed that the judge should not have instructed the jury that the clause in the bill of lading which reads: "All articles of freight, on arrival at the place of destination, are at the risk and expense of the owner," did not exempt the defendant from liability for negligence. The judge did exactly right in this matter. Railroads cannot limit their liabilities for negligence by any stipulations in their bills of lading. This matter need not be discussed, for it is already fixed as law by the decisions of our court.

In the thirteenth exception it is alleged the Circuit Judge was in error when he charged the jury: "Did they (defendant) put it (the cotton) in a place of safety when it reached Savannah? Did they safely keep the cotton—preserve it? If they did not, they, under the laws of the State of Georgia, would be liable for any damage resulting." The presiding judge made this quotation from the Georgia case cited by appellant: "We think section 2044 of the Code dispenses with the notice in this case, and relieves the plaintiff from any error or liability as to common carrier, after the transportation of the freight within the accustomed time, *a deposit of it in a place of safety*, and the *holding of it there ready for delivery on demand*" (italics ours). Remembering that, as to delivery, the defendant as well as plaintiff were bound by the laws of the State of Georgia, where the delivery was had, we can see no error on the part of the Circuit Judge, for it is in keeping with the requirements of the laws of Georgia on this subject. This ground of appeal is dismissed.

As to the fourteenth ground of appeal, we cannot see how the Circuit Judge could have more fairly stated the

8—46

law, as we have just held in considering the thirteenth exception   This ground of appeal is dismissed.

The fifteenth ground of appeal must be dismissed, for the Circuit Judge ought not to have so held in his charge, in view of the requirements of the laws of Georgia, that the railroad was required to safely keep it until demand of the shipper for his property.

The sixteenth ground of appeal complains that the Circuit Judge refused to grant a new trial.   The case for appeal fails to disclose any such application.   This court cannot, therefore, consider this question.   Besides, in all candor, we would not interfere with the exercise of the discretion of the Circuit Judge in this matter under the case here presented.   This ground of appeal is dismissed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.