6613

## JONESVILLE MFG. CO. v. SOUTHERN RY.

1. CARRIER—FREIGHT—NOTICE.—Under the common law, presumed to be of force in Wisconsin, and under the customs proved in this case, it was duty of carrier to notify Milwaukee consignee of arrival of freight at its destination.

2. IBID.—CONNECTING LINE—CONSTITUTIONAL LAW—FREIGHT.—Sec. 2176, CODE OF 1902, making initial carrier liable for loss of goods shipped over it and connecting lines unless it produce a receipt in writing from its connecting carrier, is constitutional, and production

by initial carrier of a *per diem* sheet showing delivery to connecting carrier of cars and goods each day, including the goods in question, signed by connecting carrier, is a receipt in writing under the terms of the statute.

Before PRINCE, J., Union, Summer Term, 1906. Reversed.

Action by Jonesville Mfg. Co. *v.* Southern Ry. Co. From judgment for plaintiff, defendant appeals.

*Messrs. Sanders* and *DePass* and *Townsend & Townsend* for appellant. The former cite: *Bill of lading and not statute governs:* 19 S. C., 353; 36 S. C., 110; 43 S. C., 473. *Court below construed statute too narrow:* 14 Ency., 979.

*Messrs. Townsend & Townsend* cite: *Railroads are not required to give notice to consignees:* 50 S. C., 129; 72 S. C., 43. *Every shipper is presumed to have assented to provisions in bill of lading:* 5 Ency., 296. *As to waiver of defects in depositions:* 33 N. J., 26; 33 Miss., 669; 124 Ind., 443; 116 Ind. 502; 2 Elliott on Ev., secs. 1151, 1180. *What objection to depositions should be made before trial:* 42 Ind., 60; 72 Ind., 258; 132 N. C., 402; 21 Wall., 33; 89 N. J., 570; 64 Kan., 580; 149 U. S., 481. *When objection deemed waived:* 5 Ency., 616; 56 S. C., 390; 12 How., 354; 65 S. C., 503. *As to form of receipt required by sec. 2176:* 33 S. C., 367; 26 S. C., 258. *Section 2176 is a burden on interstate commerce:* 17 Ency., 74, 75, 95; 63 S. C., 248; 196 U. S., 194.

*Mr. J. Ashby Sawyer,* contra, cites: *What plaintiff must show to make out a prima facie case:* 73 S. C., 291. *Receipt sought by defendant was not on collateral issue:* *Walker* v. *Ry.,* 52 S. C., 82; 43 S. C., 95; 59 S. C., 470. *Judge may instruct jury there is no testimony on a point in issue:* 26 S. C., 168; 46 S. C., 52; 49 S. C., 294, 558; 47 S. C., 522. *What is meant by receipt in writing in sec. 2176?*

31—77

33 S. C., 359; 75 S. C.,      ; 76 S. C., 276; 66 S. C., 479. *The section is not violative of interstate commerce clause of U. S. Con.:* 33 S. C., 359; 62 S. C., 415; 63 S. C., 250. *Burden was on defendant to show the loss occurred from some excepted cause:* 73 S. C., 289; *Johnstone* v. *Ry.,* 39 S. C.; 26 S. C., 258; 6 Cyc., 382.    *And that there was no negligence:* 9 Rich., 201; 2 Rich., 286.

August 5, 1907.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    This action was begun on August the 4th, 1905, by the plaintiff to recover of the defendant railroad company the value of five cases of hosiery delivered to it at Jonesville, S. C., consigned to Kaufer, Smithing & Co., Milwaukee, Wis., the same being five of a shipment of seven cases.    The defendant admitted the receipt of the goods but alleges that they were lost by a connecting carrier and produced in evidence a contract of carriage signed by both parties, by which it was agreed defendant's liability should be limited to its own line.    Also by its amended answer, it set up loss by the act of God.

The case came on for trial before his Honor, Judge Geo. E. Prince, and a jury at the June, 1906, term of Court for Union County and resulted in a verdict of three hundred and thirteen dollars and thirty-nine cents for the plaintiff.    A motion for a new trial having been refused defendant appealed.

The first question we consider is whether a nonsuit should have been granted.    If there is any evidence to go to the jury or if the plaintiff makes out a *prima facie* case a nonsuit will not be granted.    *Norris* v. *Clinkscales,* 44 S. C., 315, 22 S. E., 1; *Jacobs* v. *Gilreath,* 45 S. C., 46, 22 S. E., 757; *Springs* v. *Railway,* 46 S. C., 104, 24 S. E., 166, and numerous other cases.    Here plaintiff proved delivery to the defendant and that the goods were not received by the consignee.    Defendant contends, however, that there was no evidence showing the goods did not

arrive at Milwaukee, and, therefore, the presumption is that they did arrive; that the Circuit Judge was in error in charging that it was incumbent upon the railroad to give the consignee notice of the arrival of the goods at their destination. The last contention must be sustained. The law of South Carolina does not require notice. *Bristow* v. *Railway,* 72 S. C., 44, 51 S. E., 529. The law of Wisconsin, not having been proved, will be presumed to be the common law as understood and enforced by the Courts of this State. But apart from this, it was shown that it was the custom of the defendant to notify Kaufer, Smithing & Co., of the arrival of their goods, as was done in the case of the two cases received. The presumption, therefore, is that if these goods had arrived, notice would have been given to the consignee. Hence, plaintiff having shown delivery to the defendant and that Kaufer, Smithing & Co. never received any notice of their arrival, a *prima facie* case was made out and the nonsuit was properly refused.

The controlling question in the case is the construction of section 2176 of the Civil Code of 1902, which provides: "In case of loss or damage to any article or articles delivered to any railroad corporation for transportation over its own or connecting roads, the initial corporation or corporation first receiving the same, shall in every case, be liable for such loss or damage, but may discharge itself from liability by the production of a receipt in writing, for the said article or articles from the corporation to whom it was its duty to deliver such article or articles in the regular course of transportation. In which event, the said connecting road or roads shall be severally so liable, but may in succession and in like manner discharge themselves respectively therefrom; but if any such corporation shall wilfully fail or refuse, upon reasonable demand being made to it by any party interested in the production of such receipt, to produce the same, then it shall not be entitled to claim the benefit of such exemption in any action against the said railroad corporation to render it liable for such loss or damage." The

Circuit Judge charged and held, in overruling the motion for a new trial, that under this statute, defendant was absolutely liable if it failed to produce a receipt from its connecting carrier. Defendant attacked the constitutionality of the act as applied to carriers beyond the borders of the State. We think the act is constitutional. It does not seek to impose any burden on interstate commerce. There is no attempt in any way to try to prevent the carrier from making a contract limiting its liability to its own road. Where such a contract is entered into, however, the road remains responsible until it proves that it did not cause the loss or damage   The act in question was intended only to establish a rule of evidence by which the connecting carrier could relieve itself of such liability, which, according to the case of *Richmond, etc., Railroad* v. *Patterson Tobacco Company,* 169 U. S., 312, 42 L. Ed., 760, a state has a right to do.

The question arises, then, what constitutes a receipt in writing. The term usually implies a formal paper signed by one party and delivered to another. This was doubtless the meaning of receipt in the mind of the Circuit Judge when he charged the jury in this case. We do not, however, think that such a limitation should be put upon the act. Its purpose was to enable railroads to relieve themselves from liability for loss of goods by showing by written evidence that they had been delivered to a connecting carrier. In the case of *Miller Bros.* v. *Railway,* 33 S. C., 359, 366, 11 S. E., 1093, in which objection was made to the admission of certain evidence, thus raising the identical question raised here, the Court said: "Without now undertaking to decide whether there are circumstances under which parol testimony may be admissible to prove the delivery of property by one carrier corporation to its next connecting line, we think the testimony of Cudworth as to the receipt of the property by the steamship line, cannot be said to be 'merely oral.' He said 'he recollected the receipt of the goods by referring to my receipts.' Being shown the paper, dated October the 4, 1887 (exhibit C), he said, 'That is the origi-

nal in my handwriting. These (describing the property), are checked off as received. They are records of my office; duplicates were furnished the South Carolina Railway Company,' &c. We do not understand that the act requires the receipt spoken of to be in any particular form. The intention was to require the delivering company, in order to discharge itself, to produce such written evidence of the receipt of the property by the connecting carrier to which it is delivered as will shift the liability to account for the property to that company. As it seems to us, the paper dated October 4, 1887, and signed by Alfred Cudworth 'for steamer,' sufficiently identifies the property received, and is substantially such 'receipt in writing' as to be a ·discharge to the railroad company." Applying this language to the case now under consideration, we think there is such production of a receipt that will prevent the Circuit Judge from holding that there was a total failure on the part of the defendant to produce a receipt in writing, and therefore, it could not possibly get a verdict in its favor. Witness Pollard, the freight agent of the M. & O. Railroad Company at St. Louis, testified from a record of his office known as the *per diem* sheet, that "the seven cases billed K. F. products were received at. East St. Louis, June the 4th, 1903, in Southern Car No. 24082, from Corinth Miss., on way bill 25, dated June 1st, 1903. That they were transferred, on June the fifth, 1903. into C. & A. car No. 15173, which was delivered to the Terminal Railroad Association at East St. Louis, Ill., for the C. & A. Road on June the 6th, 1903, and were receipted for by them at 3 :45 that day." According to the testimony, the *per diem* sheet accompanies all cars transferred from one railroad company to another, and is signed by the agent for both receiving and delivering roads, and it is an acknowledgement of the receipt of the car by the receiving company. It is to establish the delivery of cars to the railroad interested. This sheet was also introduced in evidence and was, according to the language of the Court above cited, of itself apart from other records and testimony based upon them,

sufficient receipt of the goods by the M. & O. Railroad Company.

This conclusion, we think, is decisive of the case. There are other exceptions but the decision of this question either decides them or makes consideration of them unprofitable.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.