7542

CHARTRAND v. SOUTHERN RY.

1. CARRIER — CONNECTING LINE — STEAMSHIP COMPANY — ROUTING FREIGHT—BURDEN OF PROOF.—Under section 2176, of Code, 1902, an initial carrier under a bill of lading relieving it of liability for loss by production of receipt in writing from connecting carrier "in good order" relieves itself of liability by showing such receipt from a connecting steamship company, but it is its duty to give the connecting carrier proper routing instructions and is liable for loss on

connecting carrier on failure to do so; the burden being on the initial carrier to show proper routing information was given.

2. FACTS—VERDICT.—On motion to direct a verdict, the Court can assume as facts only those admitted, those about which there is no dispute, and those proven by undisputed or indisputable evidence.

3. PLEADINGS—ISSUES—CARRIER—ROUTING.—To raise the issue of misrouting it is not necessary to allege it, but plaintiff may raise it in reply to effort of initial carrier to discharge itself by showing delivery to connecting carrier under the statute.

4. CARRIER—ROUTING FREIGHT.—Sending freight by a longer route when there is a shorter available is not of itself misrouting. Duty of carrier as to routing stated.

5. ISSUES—HARMLESS ERROR.—Where the plaintiff puts in evidence a bill of lading produced by carrier on notice, and carrier puts in a carbon copy proved to be correct, the issue of proof of bill of lading should not be sent to the jury, but the error here held to have been harmless under proof and charge here.

Before KLUGH, J., Richland, June, 1909. Affirmed.

Action by Kate Kirby Chartrand against Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Mr. E. M. Thomson*, for appellant, cites: *Appellant relieved by delivery according to statute to connecting carrier:* Sec. 2176, Code, 1902; 77 S. C., 490; 81 S. C., 111.

*Mr. F. G. Tompkins*, contra. Oral argument.

April 9, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Plaintiff recovered judgment against defendant for the value of certain goods delivered by her to defendant for transportation from Columbia, S. C., to a point in Cuba. The destination given in the bill of lading is "Ceiba Mocha, Prov. Matanza, Cuba." The route given is "Havana, Cuba." The bill of lading stipulates that no carrier thereunder shall be liable for loss or damage not occurring on its portion of the route. This stipulation

was pleaded by the defendant, in exoneration of liability. The goods never reached their destination. Defendant put in evidence a receipt for the identical goods, "in good order," from the Southern Railway Company, signed "Jas. Gibboney & Co., Agts., per Cooper." This receipt gave the name of the consignee, as in the bill of lading, but the destination given was: "Havana, Cuba, Prov. via Matanza, Cuba." Defendant's warehouse foreman testified that he delivered this shipment to Gibboney & Co., who were agents for the Manson Steamship line, a connecting carrier, which ran a line of boats from Mobile, Ala., to Havana, and took the receipt in evidence which was signed and delivered to him by Cooper, a clerk in their office.

The defendant moved the court to direct a verdict in its favor on the ground that, having proved a receipt for the goods from the connecting carrier, in regular course of transportation, under the stipulation in the bill of lading, and under the provisions of section 2176 of the Code of 1902, it was released from liability. The motion was refused. Section 2176, so far as relevant to the issue here, is as follows: "In case of the loss of or damage to any article or articles, delivered to any railroad corporation for transportation over its own and connecting roads, the initial corporation, or corporation first receiving the same, shall, in every case, be liable for such loss or damage, but may discharge itself from such liability by the production of a receipt, in writing, for the said article or articles, from the corporation to whom it was its duty to deliver such article or articles, in the regular course of transportation."

Construing this section, it was held, in *Miller Bros.* v. *Ry.,* 33 S. C., 359, 11 S. E., 1093, 9 L. R. A., 833, that the statute should be liberally construed and that the production of a receipt from a steamship company, to whom the freight was delivered, as the next connecting carrier, in the regular course of transportation, was a substantial compliance with its provisions, and released the initial carrier from liability,

the words "connecting roads" being held to include "connecting steamship lines." The statute had a liberal construction also in *Jonesville Mfg. Co.* v. *Ry.*, 77 S. C., 480, 58 S. E., 422, where it was held that the production by the initial carrier of a *per diem* sheet, showing delivery to a connecting carrier each day of goods and cars containing goods, including the goods in question, signed by the agent of the connecting carrier, was a sufficient receipt, in writing, to satisfy the requirement of the statute.

In the case of *Miller Bros.* v. *Ry., supra,* the Court said: "The object of the enactment being manifestly to provide a proper remedy for the shipper in what is called 'through transportation,' by making each link—each carrier in the line—liable for its own negligence or conduct causing loss or damage to the property, the act to promote this intent should be construed liberally, so as to include a steamship company which happens to be one of the common carriers in a through line of transportation agreed upon by the parties." And on page 367 : "The intention was to require the delivering company, in order to discharge itself, to produce such written evidence of the receipt of the property by the connecting company to which it was delivered as will shift the liability to account for the property to that company."

In view of the purpose and intent of the act above stated, the liability of the initial carrier continues, until that of the next succeeding carrier has attached. The initial carrier acts as the agent of the shipper in delivering the goods to the next in line, and is not discharged from liability until the duties of the agency have been performed, according to the contract of shipment or the directions of the shipper. The mere delivery of the goods to the next in line is not enough to discharge the initial carrier from liability, but he must show that the delivery was accompanied with proper shipping instructions, or at least such as he received from the shipper, so that the carrier receiving them can forward them to destination.  6 Cyc., 483; 6 A. & E. Enc. L. (2 ed.),

608, 626-28, and notes. On page 628, it is said: "The mere fact that marks or labels on the package consigned indicate the point to which they are to go will not excuse a failure to transmit instructions to a succeeding carrier; if the instructions are omitted from the shipping bills the initial carrier is responsible for the falure of the next line to know of them."

The variance between the shipping instructions as to the destination and route contained in the bill of lading and those contained in the receipt from Gibboney & Co., which, according to the evidence, was made out by the defendant's agent at Mobile, shows that the defendant did not give the next carrier proper instructions as to the destination and route. This may have caused the loss. If it did the defendant cannot claim the benefit of the statute, or of the exemption stipulated for in the bill of lading. The burden was upon the defendant to show that its failure to extend to the connecting carrier proper shipping instructions did not cause or contribute to the loss. 6 Cyc., 383-4; 5 A. & E. Enc. L. (2 ed.), 423. It did not attempt to do this, but contented itself with introducing evidence tending to show delivery of the goods to a connecting carrier, and with introducing the receipt of such carrier for them. While the testimony of defendant's warehouse foreman as to the delivery of the goods to Gibboney & Co., and their agency for the Manson Steamship line was uncontradicted, still the Court could not assume that it was true. The truth or falsity of testimony and the sufficiency of it to establish facts in issue, are questions for the jury. When a fact is admitted, or when there is no dispute about it, or when the evidence to prove it is both undisputed and indisputable, the Court may assume the existence of the fact; otherwise, in a law case, it is a question for the jury. The allegation of defendant's answer that the goods had been delivered to a connecting carrier was one of the vital issues in the case. There was, therefore, no error in refusing to direct a verdict.

The defendant excepts, because the Court refused its 7th request, to wit: "There is no allegation whatever in this case as to the misrouting of the shipment in question. You cannot, therefore, take into consideration any evidence on this subject, nor can you find any verdict against defendant as to any misrouting."

It was not necessary that there should be any allegation in the complaint as to the misrouting of the shipment. When plaintiff proved delivery of the goods to defendant, and the fact that they never reached their destination, she made out a *prima facie* case. *Fleischman* v. *Ry.*, 76 S. C., 237, 56 S. E., 944, 9 L. R. A., N. S., 519. The burden was then upon defendant to discharge itself from liability. When it undertook to do so by proving the stipulation in the bill of lading, and a receipt for the goods from a connecting carrier, the plaintiff had the right to show, in reply, that defendant had forfeited its rights, under the stipulation and the statute, by misrouting the goods and by failing to give the connecting carrier proper shipping instructions.

But defendant suffered no prejudice by the refusal of its request because the Court gave no instructions on the subject of misrouting, but did instruct the jury that if the receipt in evidence was the receipt of the Manson Steamship line, the defendant was discharged, which, we have seen, was too favorable to defendant.

Against objection of defendant, plaintiff attempted to show a misrouting, by proving that defendant owned a line of railroad from Columbia to Jacksonville, Fla., and that there were connecting roads from Jacksonville to port Tampa, Fla., and a line of steamships thence to Havana, and that this was a more direct route from Columbia to points in Cuba than the route by Mobile.

The only routing given in the bill of lading was "Havana, Cuba." There was no evidence of any other instructions to defendant as to the route. Where no special route is agreed upon and no instructions are given, the rule is that the car-

rier may select the route usually adopted by it in sending shipments to the point of destination.   Hutch. on Car., sec. 613; 6 A. & E. Enc. L. (2 ed.), 626.   But, even then, the carrier must, in selecting the route, have due regard to the rights and interests of the shipper; as for example, if it is known to a carrier that a shipment will be more liable to loss or injury on one route than it will on another, he must select the safer route or be liable for the consequences, especially where instructions to that effect are given.   *Davis* v. *R. R.,* 81 S. C., 466, 62 S. E., 856; Hutch. on Car., sec. 615; *U. S. Express Co.* v. *Kountze,* 8 Wall., 342, 19 L. Ed., 457; *Pierce* v. *So. Pac. Co.,* 120 Cal., 164, 40 L. R. A., 353. So, also, if the carrier knows that sending the shipment over a certain route will cause unusual delay in its arrival at destination, when there are more direct or quicker routes, the carrier must inform the shipper that he may select a better route, or be responsible for the delay.   6 A. & E. Enc. L. (2 ed.), 609, note.   But the matter of delay was not involved in this case, and the Mobile route, though it may have been longer, in point of distance, may, nevertheless, have been as short in point of time as the Jacksonville route.

The defendant's second request was as follows: "A common carrier has the right to make a contract limiting its liability to its own line, and such a contract is binding on the shipper.   In this case such a contract was made, as is evidenced by the bill of lading introduced in evidence."

The first part of this request was charged.   The last part, "in this case," etc., was refused, the Court saying: "That is a question of fact, whether this is the bill of lading or not."

The original bill of lading was produced by the plaintiff, on notice to produce from defendant, and put in evidence by defendant, without objection.   A carbon copy, made at the same time with the original, was identified by the clerk who made it, on cross-examination by the plaintiff, and put in evidence by plaintiff, without objection.   It was, there-

fore, an admitted or undisputed fact in the case, and it was error to submit to the jury the question whether the paper in evidence was the bill of lading.

We think, however, the error was harmless. Because throughout the charge the Court assumed that the bill of lading was in evidence, and that the stipulation therein, relied upon by the defendant had been proved; and the jury were instructed several times that, if the receipt in evidence was the receipt of a connecting carrier for the goods, or if defendant had proved delivery of the goods to a connecting carrier, it was discharged from liability, and their verdict should be for the defendant, which instruction necessarily assumed that the stipulation had been proved. Besides, as stated above, both the original and a copy of the bill of lading were put in evidence without objection, the one by the defendant, the other by the plaintiff. Both parties, therefore, may be said to have conceded that the bill of lading was in evidence. Under the circumstances, any other finding would have been unwarranted, and we do not think that an intelligent jury could or would have based a verdict upon such an unwarranted conclusion. Hence, we think the error was not prejudicial to defendant.

Judgment affirmed.