JOSEPH H. COWEN *vs.* ALBERT C. KIRBY & another.

Plymouth. January 7, 1902. — February 27, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Mere licensee, Contributory. *Bailment*, Rights of bailor on premises of bailee.

The plaintiff left his horse and wagon in the public stable of the defendant for temporary custody. After the horse had been taken out the wagon was backed against the wall for storage. The plaintiff followed the wagon and put his driving gloves in it, then accepted a check for his team and left the stable. Later, returning with some packages which he wished to place in his wagon, he found it in the same place, but other wagons had been placed there, one of them immediately in front of his. He swung himself around a post and leaned toward his wagon, when a carriage hoist which he had not noticed came down on him and caused the injuries for which he sued. There were in plain sight various appliances indicating the presence of a carriage hoist, including a check rope and a double hoisting hawser of heavy rope hanging next the plaintiff's wagon and within two feet of the post, and the post itself was grooved to guide the hoist. *Held*, that in revisiting his wagon the plaintiff was at most a mere

licensee for whose safety the defendant was not bound to provide at that part of his premises. *Held, also,* that the plaintiff in failing to notice the obvious indications of a carriage hoist was not in the exercise of due care.

TORT against the proprietor of a public stable in New Bedford for injuries to the plaintiff from a carriage hoist coming down on him while he was putting a package into his wagon then in charge of the defendants. Writ dated February 2, 1900.

In the Superior Court, *Lawton,* J. ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*T. Weston & D. T. Devoll,* for the plaintiff.

*L. LeB. Holmes,* for the defendants.

BARKER, J. The defendants kept a stable situated at the corner of two streets, and as a part of their business took in for keeping and care the vehicles and horses of those persons who might come for that service. Upon the ground floor was a large room into which teams were driven from one of the streets, and in which horses were unhitched and hitched up and vehicles were stored. Out of this room opened a number of doors, one of which led to stalls where the horses were kept, two led to harness rooms, one to a ladies' waiting room, and one to an office. The two latter doors were near the team entrance, and the waiting room and the office had outer doors also giving entrance from the other street.

The plaintiff drove his horse and wagon into the stable and got out of the wagon. Hostlers unhitched the horse and backed the wagon to the wall opposite the entrance. The plaintiff followed the wagon back and put his driving gloves into it, and upon receiving a numbered check for his team left the stable. It does not appear that while he was there anything was said by any one. After some hours he re-entered by the door for carriages and walked across the room intending to place some packages in his wagon which remained where he had seen it placed. Other wagons had been put in the room in the meantime and one of these was immediately in front of his. He passed to the left of the front wagon. About two feet to the left of his wagon was a post, and not choosing to pass between the wagon and the post he swung himself around the post and then leaned toward his wagon to put his packages into it. The post was in fact a part of the apparatus of a hoisting machine used to carry vehi-

cles between the ground floor and the upper floors of the stable. While the plaintiff was leaning toward his wagon the hoist loaded with a vehicle descended upon him. Whether he can recover for his injury depends upon whether at the time and place where he was when hurt he was more than a mere licensee, and if so whether he was in the exercise of due care.

The fact that a person enters a place of business as a customer does not give him the right to expect that every part of the premises shall be so arranged and kept that he may be in safety. He knows the purpose for which they are used and must assume that they will be prepared and adapted for that purpose, and must take notice of that preparation and adaptation at least so far as it is obvious. It is only those parts of the premises where customers are expected to be that the owner or occupant must keep in a suitable condition for them, and in such parts only has a customer a right to assume that care has been used to protect him from injury. He enters knowing that the place is not arranged merely for his own convenience. He may expect that he will be safe in conducting himself as a customer is expected to act, but he has no right to expect that he will be safe if he oversteps that limit. The owner without being in fault may adapt his premises to his business and may use them in the way for which they were designed, unless in so doing he exposes the customer to some danger which the latter has the right to expect he will not be exposed to, and the customer must expect to find such appliances and such uses of the premises as are involved in the prosecution of the business. If without some special invitation, express or implied, a customer sees fit to pass from that part of the establishment where it is designed and expected that he shall be into other parts not designed or adapted for his use, but for the work of the place, he becomes at best a mere licensee, as to whom the owner or occupant has no duty to keep his premises safe. *Severy* v. *Nickerson*, 120 Mass. 306. *Gaffney* v. *Brown*, 150 Mass. 479. *Marwedel* v. *Cook*, 154 Mass. 235. See *Redigan* v. *Boston & Maine Railroad*, 155 Mass. 44; *Plummer* v. *Dill*, 156 Mass. 426, 428, 429; *McCarvell* v. *Sawyer*, 173 Mass. 540; *Moffatt* v. *Kenny*, 174 Mass. 311; *Harobine* v. *Abbott*, 177 Mass. 59.

When the plaintiff having placed his driving gloves in the

wagon accepted the check for his team and left the stable, no custom of business nor special invitation having been shown, he neither reserved nor obtained any right to use the stable for the purpose of placing other property in his wagon, nor to enter the room in which the wagon was, except for the purpose of reclaiming his property. In fact, although the plaintiff testified that he did not know it, a place for customers' parcels was provided in the office. However this may have been there is nothing in the evidence to justify a finding that he had any right to expect that upon entering the stable the second time he would find it in a condition safe for him to walk through to his wagon and place in it other packages. In so doing he was visiting merely for his own convenience a part of the stable which obviously was not designed or intended for his use, but for the storage of vehicles. There was nothing to give him the right to infer or assume that by placing other articles of his own in his wagon he could charge the defendants with their custody, or that he had the right to use the room for the purpose of putting other articles in his wagon. His second visit being solely for that purpose, in making it he was at best but a mere licensee, and must take the place as he found it.

Besides this he was not in the exercise of due care. The raised brow upon the floor over which he walked in going to his wagon and the depression beyond it in which the platform of the hoist rested when down, the grooved posts which guided the platform in its ascent and descent, and around one of which he swung himself, the box in which the counter-weight hung, the check rope, and the double hoisting hawser of heavy rope hanging next his wagon and within two feet of the post were all plainly visible, and all indicated obviously that the place where he chose to stand was used by a carriage hoist. He himself testified that if he had seen the hoisting rope hanging down and going around he would have thought there was an elevator there. We are of opinion that there were so many obvious indications that he stood in the way of a hoisting machine, that he could not be found to be in the exercise of due care.

*Exceptions overruled.*