### NEW YORK LUBRICATING OIL CO. v. PUSEY.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 90.

1. NEGLIGENCE (§ 136*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to an employé of á seller· of oil, who went upon the buyer's tank for the purpose of measuring the oil before and after delivery, and fell by reason of the insecure fastening of a manhole cover, evidence *held* to make a question for the jury as to his negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. NEGLIGENCE (§ 32*)—CONDITION OF PREMISES—CARE REQUIRED AS TO INVITEES.

An employé of a seller of oil, which was being pumped from its barge directly into the buyer's tank, who, as was customary, went upon the tank in company with the buyer's representative to measure the oil through a manhole before and after delivery, was not a trespasser, or even a licensee, but was there by invitation implied by law, where one enters on the premises of·another to carry out a purpose which is to the common advantage or to the common interest of the owner and himself, and it was the duty of the owner to exercise ordinary care.and prudence to keep the premises in a safe and suitable condition so that he would not be exposed unnecessarily or unreasonably to danger.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. NEGLIGENCE (§ 32*)—CONDITION OF PREMISES—CARE REQUIRED AS TO INVITEES.

An employé of a seller of oil which was being pumped into the buyer's tank went upon the tank in company with the buyer's representative to measure the oil through a manhole before and after delivery. There was a manhole in the roof about six ·inches from the edge of the tank,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and directly in front of the ladder, the cover of which was insecurely. fastened. The buyer's representative, having been frequently on the tank, reached across the cover and took hold of the flange in climbing on to the roof, but the seller's employé, not knowing that the cover was insecurely fastened, took hold of the handle of the cover and fell when the cover came off. *Held*, that the implied invitation to such employé was not, as claimed, an invitation to take hold of the manhole by the flange or collar only, and not by the handle of the cover.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

4. NEGLIGENCE (§ 65*)—LIABILITY—CONTRIBUTORY NEGLIGENCE.

A person injured through another's negligence cannot recover if his own negligence contributed to the injury, and his negligence may be of a negative character, such as lack of vigilance, but to defeat a recovery. it must amount to a want of ordinary care, as the law does not require him to exercise extraordinary care or the utmost possible caution.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 83, 94; Dec. Dig. § 65.*]

5. NEGLIGENCE (§ 67*)—LIABILITY—CONTRIBUTORY NEGLIGENCE.

A person has a right to presume that every other person will perform his duty, and, in the absence of reasonable ground to think otherwise, it is not negligence to assume that one is not exposed to danger which can come only from another's negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 90, 91; Dec. Dig. § 67.*]

6. NEGLIGENCE (§ 136*)—ACTIONS—QUESTION FOR JURY.

If at the close of plaintiff's case there is evidence upon which the jury might find for plaintiff, defendant's negligence should be submitted to the jury even though the great preponderance of the testimony is with defendant, as there are few questions within the range of judicial inquiry which are regarded as more peculiarly and exclusively within the province of a jury than those of negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

7. NEGLIGENCE (§ 136*)—ACTIONS—QUESTION FOR JURY.

Where the facts are such that there is room for difference of opinion between reasonable men as to whether or not negligence should be inferred, the right to draw the inference is for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by Edward Pusey against the New York Lubricating Oil Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William Butler, of New York City (Lowen E. Ginn, of New York City, of counsel), for plaintiff in error.

King & Booth, of New York City (Frederick P. King, of New York City, Albert D. MacDade, of Chester, Pa., and Frederick J. Moses, of New York City, of counsel), for defendant in error.

Before COXE, WARD and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This action was brought to recover damages for personal injuries arising out of the alleged negligence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the defendant. A verdict was returned in favor of the plaintiff and against the defendant for $10,000, and judgment was entered for $10,105.35, damages and costs.

[1] The plaintiff was a deck hand employed by the Pure Oil Company on one of its barges—loaded with oil in bulk. The oil, which had been sold to the defendant, was being pumped from the barge directly into one of defendant's tanks. In all such transactions the custom is to have the contents of the tank gauged before and after delivery by representatives of the buying and selling companies who go to the top of the tank, measure the depth of oil through a manhole, agree upon the gaugings and exchange signed memoranda of their measurements. The defendant, who had had previous experience and had done gauging before, was designated by the captain of the barge to make the gaugings for the Pure Oil Company, and one O'Brien was designated by the defendant to make the gaugings on its behalf. The tank was cylindrical in shape, 30 feet high and about 20 feet across. The only means of reaching its top was by a series of handholds forming a ladder up the side of the tank. The top step was 16½ inches below the edge of the tank. The roof was conical and sloped down from the center to the circumference. There was a manhole on the roof about six inches from the edge of the tank and directly in front of the ladder. The manhole cover weighed about 25 pounds. In the middle of the manhole cover was a handle in the form of a low arch. The cover was intended to be fastened down by four bolts. On the day of the accident, and for several years before, there was but one bolt in the cover. O'Brien, the defendant's gauger, had frequently been on the tank to gauge, and knew that there was but one bolt in the slots. The plaintiff had never done any gauging on this particular tank, and had never seen a manhole cover fastened with bolts on a sloping roof tank. The usual construction of sloping roof tanks includes a manhole cover fastened to the roof by a hinge. The plaintiff was not informed that the cover was insecure. O'Brien preceded the plaintiff up the ladder. He reached across the manhole cover and took hold of the flange and thus climbed safely to the roof. Then plaintiff mounted the ladder, and as he reached the top saw the cover right in front of him and took hold of the handle to pull himself over the edge. It came off in his hand, and he fell to the ground and was injured. The bones of his leg were driven down through the ankle bone and came out and produced a very bad injury. He was operated on several times in an effort to save the foot. The physicians on both sides agreed that the foot would have to be amputated.

The court below charged the jury that it was one of the duties which any employer of men is under to furnish a reasonably safe place for his own workmen to work in, and that, if in the course of his workmen's employment, some outsider is invited upon the premises to take part in the work which is being done by his own workmen, then the same employer is bound to exercise ordinary care and prudence in seeing that the place where the party is invited to work is in a reasonably safe condition. He also informed the jury that it was for them to say whether the defendant had furnished a reasonably safe

place for his own workmen and for the people who were invited to come there and get up onto the top of that tank, and that if they found that the plaintiff's own negligence contributed to his injury, he could not recover.

[2] In considering whether there was error in the charge, it becomes important to inquire whether the defendant owed any duty to the plaintiff. If the court can say as a matter of law that no duty was owing from the defendant, the judgment must be reversed. The plaintiff was not a trespasser, but was rightfully upon the property. The defendant invited the plaintiff's employer to enter on the premises with such of its servants as might be necessary to fill the oil tank with the oil which he had purchased, and, acting under the orders of his employer, the plaintiff entered. An invitation is implied by the law where one enters on the premises to carry out a purpose which is to the common advantage or to the common interest of the owner and himself, as in the case of one going on property on business of the owner. Heskell v. Auburn, Q. H. & P. Co., 209 N. Y. 86, 91, 102 N. E. 540; Dixon v. Swift, 98 Me. 207, 56 Atl. 761; Norris v. Nawn Contracting Co., 206 Mass. 58, 91 N. E. 886, 31 L. R. A. (N. S.) 623, 19 Ann. Cas. 424; Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463; Purtell v. Philadelphia & R. Coal Co., 256 Ill. 110, 99 N. E. 899, 43 L. R. A. (N. S.) 193, Ann. Cas. 1913E, 335. The law is clearly established that the owner of premises who induces another to come upon it by invitation, express or implied, owes to him the duty of exercising ordinary care and prudence to keep the premises in a safe and suitable condition so that he will not be exposed unnecessarily or unreasonably to danger. Barrett v. Lake Ontario Beach Improvement Co., 174 N. Y. 310, 66 N. E. 968, 61 L. R. A. 829; Wright v. Perry, 188 Mass. 268, 74 N. E. 328; Smith v. Jackson, 70 N. J. Law, 183, 56 Atl. 118; Crogan v. Schiele, 53 Conn. 186, 1 Atl. 899, 5 Atl. 673, 55 Am. Rep. 88; Lauritsen v. American Bridge Co., 87 Minn. 518, 92 N. W. 475. In Holmes v. N. E. Ry. Co., L. R. 4 Exch. 254, a workman going into the private grounds of a railroad company to assist in unloading coal was allowed to recover damages for an injury sustained by the insecurity of a flagged path in the yard. He was not a mere licensee; being there, as the court said, in a transaction of common interest, he was entitled to require that the defendant's premises should be in a reasonably secure condition. The case was affirmed in L. R. 6 Exch. 123.

In his work on Torts (3d Ed.) p. 1259, Judge Cooley states the rule as follows:

"When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

It is only those parts of the premises where the person invited is expected to be that the owner is required to keep in a reasonably safe condition. Cowen v. Kirby, 180 Mass. 504, 62 N. E. 968; Phillips v. Library Co., 55 N. J. Law, 315, 27 Atl. 478; League v. Stradley, 68

S. C. 515, 47 S. E. 975. But at the time the plaintiff was injured he was in that part of the premises where he was invited to go. It is impossible, therefore, to conclude either that the plaintiff was at the time of the accident a mere trespasser or even a licensee. He was there upon invitation, and that imposed upon the owner an obligation to have the premises reasonably safe. It may be conceded that he was not under obligation to have the premises in an absolutely safe condition. Distilleries Co. v. Hair, 103 Ky. 196, 44 S. W. 658. He was merely required to exercise ordinary care to keep the premises, or that portion which the plaintiff was invited to enter, in a safe condition. Odell v. Solomon, 99 N. Y. 635, 1 N. E. 408; Marsh v. Minneapolis Brewing Co., 92 Minn. 182, 99 N. W. 630; Sesler v. Rolfe Coal, etc., Co., 51 W. Va. 318, 41 S. E. 216.

[3] The invitation which the defendant extended to the plaintiff was to go to the roof of the tank by means of the ladder, and when he got to the top to take hold upon what he might there find to help him to get upon the roof. To say that the invitation was to take hold of the manhole by the flange or collar, and not by the handle of the manhole cover which directly faced him, seems almost a quibble, and certainly is a proposition to which we cannot give our assent. No court has a right to say that the plaintiff was as a matter of law guilty of negligence when he grasped the handle of the cover in order to get upon the roof. Neither can the court say as matter of law that the premises were in a safe condition, and that a manhole cover, intended to be fastened to the roof by four bolts, was in a safe condition when secured by only one bolt. Neither can we say as a matter of law that the plaintiff was bound to look and see whether the bolts were in place or not. The plaintiff testified that from his position when he took hold of the manhole he could not see whether it was bolted or not.

[4] It is conceded that the fact that the defendant may have been at fault in not having the premises safe does not necessarily entitle the person injured to recover. The plaintiff cannot recover if his own negligence contributed to the injury. And his contributory negligence may be of a negative character, such as lack of vigilance. But the plaintiff's negligence, to defeat his action, must amount to a want of ordinary care, as the law imposes on every person the duty of using ordinary care for his own protection. The law does not require him to exercise extraordinary care or the utmost possible caution, but only ordinary and reasonable care. Graham v. Pennsylvania Co., 139 Pa. 149, 21 Atl. 151, 12 L. R. A. 293; Beers v. Housatonic R. Co., 19 Conn. 566; Louisville, etc., R. Co. v. Schmidt, 81 Ind. 264; Gulf, etc., R. Co., v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Parvis v. Philadelphia, etc., R. Co., 8 Houst. (Del.) 436, 17 Atl. 702; Chicago, etc., R. Co. v. Bailey, 66 Kan. 115, 71 Pac. 246.

[5] But it is necessary in this connection not to overlook the general rule that every person has a right to presume that every other person will perform his duty, and that, in the absence of reasonable ground to think otherwise, it is not negligence for one to assume that he is not exposed to danger which can come to him only from violation of the duty which the other owed to him. Failure to anticipate the

defendant's negligence does not amount to contributory negligence. Dixon v. Pluns, 98 Cal. 384, 33 Pac. 268, 20 L. R. A. 698; 35 Am. St. Rep. 180; Mahan v. Everett, 50 La. Ann. 1162, 23 South. 883; Hyde v. Gay, 120 Mass. 589; Smith v. Jackson, 70 N. J. Law, 183, 56 Atl. 118; Newson v. New York Central R. R. Co., 29 N. Y. 383; Knight v. Goodyear's India Rubber Glove Mfg. Co., 38 Conn. 438, 9 Am. Rep. 406; Kansas City-Leavenworth R. R. Co. v. Langley, 70 Kan. 453, 78 Pac. 858.

[6, 7] The rule is that if at the close of the plaintiff's case there is evidence upon which the jury might find for the plaintiff, the question as to the defendant's negligence should be submitted to the jury. Baulec v. New York, etc., R. R. Co., 59 N. Y. 356; Walton v. Ackerman, 49 N. J. Law, 234, 10 Atl. 709; Hewett v. Woman's Hospital Aid Association, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496; Powers v. Pere Marquette R. R. Co., 143 Mich. 379, 106 N. W. 1117; Springs v. South Bound R. R. Co., 46 S. C. 104, 24 S. E. 166. In Rauch v. Smedley, 208 Pa. 175, 57 Atl. 359, the court held that where the testimony offered by the plaintiff makes out a prima facie case, the question is for the jury, notwithstanding the great preponderance of testimony is with defendant. And where the facts are such that there is room for difference of opinion between reasonable men as to whether or not negligence should be inferred, the right to draw the inference is for the jury. Foster v. New York, etc., R. R. Co., 187 Mass. 21, 72 N. E. 331; Holmes v. Birmingham Southern R. R. Co., 140 Ala. 208, 37 South. 338; Chicago City R. Co. v. Robinson, 127 Ill. 9, 18 N. E. 772, 4 L. R. A. 126, 11 Am. St. Rep. 87; Indianapolis St. R. Co. v. Marschke, 166 Ind. 490, 77 N. E. 945; Lamb v. Missouri Pacific R. Co., 147 Mo. 171, 48 S. W. 659, 51 S. W. 81; Whitcher v. Boston, etc., R. Co., 70 N. H. 242, 46 Atl. 740; Newark Pass. R. Co. v. Block, 55 N. J. Law, 605, 27 Atl. 1067, 22 L. R. A. 374; Hays v. Miller, 70 N. Y. 112.

As the law does not require that the plaintiff should have exercised more than such care as ordinarily prudent persons would have exercised under similar circumstances to avoid danger, and as he was only required to exercise that degree of care which could reasonably be expected from one in his situation, we discover no error in the court's submitting the question to the jury.

There are few questions within the whole range of judicial inquiry which are regarded as more peculiarly and exclusively within the province of a jury than those of negligence. As said by the New York Court of Appeals:

"The wisdom of the time-honored rule of the common law which refers questions of fact to the jurors, and questions of law to the judge, is not more conspicuous in any class of civil cases, than in those which involve questions of negligence." Willis v. Long Island R. Co., 34 N. Y. 670, 679.

In a case which involved the question of the exercise of due care on the part of a child injured on a railroad turntable, the Supreme Court of the United States in Railroad v. Stout, 17 Wall. 657, 664 (21 L. Ed. 745) said:

"It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising

men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

We think no error was committed. The court was justified in submitting the case to the jury.

The judgment is affirmed.