## TACOMA RY. & POWER CO. v. REMMEN.

(Circuit Court of Appeals, Ninth Circuit. February 15, 1915.)

### No. 2424.

1. STREET RAILROADS ⊙⟹117—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to a person struck by a street car, the testimony of two passengers and a person on the street that the motorman was looking back into the car as the car approached plaintiff made a question for the jury as to defendant's negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. ⊙⟹117.]

2. STREET RAILROADS ⊙⟹98—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

The law imposes upon one attempting to cross a street car track the duty of vigilance and care.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. ⊙⟹98.]

3. STREET RAILROADS ⊙⟹117—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to a person struck by a north-bound car on a single-track street railway, where there was evidence that a car was approaching from the north, that plaintiff had seen a light leading him to believe that the north-bound car had turned onto a switch, and that he heard a whistle which he took to be a signal to it to stay on the switch for the south-bound car to pass, there was such a doubt as to his contributory negligence as justified the court in submitting that question to the jury, though he at no time looked towards the south for an approaching car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. ⊙⟹117.]

4. STREET RAILROADS ⊙⟹98—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

A person crossing street car tracks had a right to assume that the street car company would exercise ordinary care in managing its road and operating its cars, and his failure to anticipate negligence on its part was not necessarily negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. ⊙⟹98.]

5. TRIAL ⊙⟹252—ACTIONS FOR INJURIES—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

In an action for injuries to a person struck by a north-bound car on a single-track street railway, where the evidence tended to show that he took no thought of a car coming from the south, but only of one approaching from the north, and that he assumed that two cars could not

be running at the same time in opposite directions, though he also testified that about the time he was on the track he saw a street car, and thought he could make it, and tried to jump, an instruction that if plaintiff thought he had time to cross the track before the car would reach him, and did not have sufficient time so to do, it was an error in judgment on his part, and he could not recover, was properly refused; there being nothing to indicate that he made any mistake in judgment as to his time to cross ahead of a north-bound car.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ☞252.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Elling Remmen against the Tacoma Railway & Power Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The Tacoma Railway & Power Company, the defendant in the court below, owned and operated a street railway on Yakima avenue in the city of Tacoma. Between Fifty-Sixth and Sixty-Fifth streets the road was a single track. At the juncture of the avenue with each of those streets there was a switch. The plaintiff was walking south on Yakima avenue, on the west side thereof, on an evening in December when it was quite dark. He testified that when he crossed Sixty-First street he saw a light ahead of him and saw it swing to the left, and that he judged it to be a north-bound car going onto the switch at Sixty-Fifth street; that he went a little farther, and a car came along and passed him, going south; that a little after that he heard a blast of a whistle to the south, and took it to be a signal given by the car which had passed him to the car which stood on the switch at Sixty-Fifth street to direct the latter to remain there, because another car was coming south behind the signaling car; that when he heard the whistle he had gone about 150 feet from Sixty-First street; that he proceeded southward on the sidewalk until he reached a point about 300 feet south of Sixty-First street, where the sidewalk abruptly ended, being obstructed by a fence and an inclosure which extended across the sidewalk and about 12 feet into the street; that within the inclosure there were trees which, together with the fence, obstructed his view of the track south of that point; that he started to walk across the street to the east side, then thought he heard a car coming from the north, and that he kept on walking and looking north to see if he could see the headlight of a car, and that he thought he saw one, and other lights, but that he did not see anything so close to him as to involve danger, and to use his own words: "So I straightened up again, and about that time I was on the street car track, and as I glanced ahead I saw a very short distance from me a street car, and I thought I could make it, and I tried to jump at the same time she struck me." The car which struck the plaintiff was coming from the south, and he testified that at no time from the time he went out into the street did he look to see whether a car was coming from that direction.

John A. Shackleford and F. D. Oaklay, both of Tacoma, Wash., for plaintiff in error.

J. F. Fitch, B. F. Jacobs, and J. M. Arntson, all of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Error is assigned to the denial of the motion of the defendant for a directed verdict in its favor, which motion was based upon the grounds,

first, that there was no proof of the defendant's negligence; and, second, that the plaintiff was guilty of contributory negligence. So far as the first ground of the motion is concerned, we find in the record ample evidence to go to the jury tending to show that the defendant was negligent. There was the testimony of two passengers upon the car which struck the plaintiff that at the time when the car was approaching the point where the plaintiff attempted to cross the track, a point well lighted up by an electric light near by, the motorman of the car which struck him was not looking ahead, but had turned and was looking into the car, and that he had continued so to look back into the car all the way from Sixty-Fourth street to the place of the accident, a distance of 650 feet. Similar evidence was given by a witness who stood on the street opposite the point where the accident occurred.

[2, 3] A more serious question is whether or not the plaintiff was in law guilty of contributory negligence. The law imposes upon one who attempts to cross a street car track the duty of vigilance and care; and in this case the plaintiff, upon his own admission, crossed the track at a point which was not a usual crossing place and looked only in one direction for an approaching car. His action in so doing, his omission to look at any time to the south, would doubtless constitute contributory negligence in law, were it not for the fact that the defendant, by its management of its cars, gave him reason to believe that a car could not be approaching from the south. His own testimony, and the testimony of one of his witnesses, indicates that at the time when he crossed the track a car going south had left the switch at Fifty-Sixth street and was coming south toward the point where the plaintiff was. We think there is ground for saying that he had the right to assume that the defendant would not be running another car north on the same single track toward a head-on collision with the car which he saw. That circumstance was sufficient, we think, to create a doubt upon the question of the plaintiff's contributory negligence, and to justify the court in submitting it to the jury. That there was a car coming south from Fifty-Sixth street is not contradicted by the defendant, nor does the defendant show that the plaintiff incorrectly interpreted the blast of the whistle which he heard.

[4] The plaintiff had the right to assume that the defendant would exercise ordinary care in managing its road and operating its cars. Kerr v. Boston Elevated Railway, 188 Mass. 434, 74 N. E. 669; Deitring v. St. Louis Transit Co., 109 Mo. App. 524, 85 S. W. 140; Frank J. Lennon Co. v. New York Ry. Co., 108 N. Y. Supp. 995. And his failure to anticipate negligence on the part of the defendant was not necessarily negligence on his part. New York Lubricating Oil Co. v. Pusey, 211 Fed. 622, 627, 129 C. C. A. 88; Strauchon v. Met. St. Ry. Co., 232 Mo. 587, 135 S. W. 14. And so, if the defendant threw the plaintiff off his guard or placed him in peril, the latter's conduct is not necessarily contributory negligence. In re Estate of Kern, 141 Iowa, 620, 118 N. W. 451; Tacoma Ry. & Power Co. v. Hays, 110 Fed. 496, 49 C. C. A. 115; Seattle Electric Co. v. Hovden, 190 Fed. 7, 111 C. C. A. 191.

[5] In view of the foregoing consideration, it was not error to deny the instruction, requested by the defendant, that if the plaintiff failed to look and listen, or take any reasonable precaution to ascertain whether a car was coming from the south, his failure to do so would be negligence, or the further requested instruction that, if the plaintiff thought he had time to cross the track before the car would reach him, and did not have sufficient time so to do,, then it was an error in judgment on his part, and he could not recover. There was, as we have seen, no evidence to indicate that the plaintiff made a mistake in judgment as to his time to cross ahead of a car approaching from the south, or that he exercised any judgment as to danger from that direction. The evidence is that he took no thought of a car coming from the south, but only of the car which was approaching in the opposite direction, and that he assumed that the defendant could not be running two cars at the same time on a single track in opposite directions. Under all the circumstances, we think the court properly submitted to the jury the question of the plaintiff's contributory negligence.

We find no error. The judgment is affirmed.

ROSS, Circuit Judge (dissenting). I am unable to agree to the judgment in this case. In my opinion the plaintiff's own testimony shows such contributory negligence on his part as to preclude a recovery by him. I do not think it can be properly said (as is done in the opinion) that the defendant company by its management of its cars gave the plaintiff to believe that a car could not be approaching from the direction the car that inflicted the injury actually did come (the south), nor that the plaintiff had any right to assume that no car would be coming from that direction. Omitting immaterial matter, his testimony is as follows:

"On the 7th day of December, 1912, I left my home at about half past 1 o'clock and went downtown. I had 65 cents in money and paid 5 cents for car fare; bought a glass of beer, and then I bought 50 cents' worth of alcohol, and then another glass of beer, at about 5 o'clock p. m., with my last nickel. I then started to walk home, and was run down by a street car. * * * About the time I crossed Sixty-First street I seen a light that seemed like it was swinging on to the left—striking to the left. I judged it to be on the Alki switch. They call it Sixty-Fifth street switch on Yakima avenue. I thought the light was a car coming downtown, going in onto the switch. I was very close to the crossing, or on it, when I saw the light. I got a little further, and a car came along at a good speed and passed me going from town, the same direction I was going. I might have been almost in the center of that block. Not any more. Just a little after she passed me I was about in the center of the block. I heard a blast of the whistle, because I took notice of it. I thought that was a car that was coming behind, a tripper, as I knew by the time of the night it was, and thought it was a signal to the car that swung in first onto the switch for her to stop and wait until that tripper came up. When I heard the whistle I was halfway between the fence and Sixty-First street. * * * I started to walk across the street to the left, as I could not go further on the sidewalk, and there was an orchard and the fence in front of me. As I started to cross the street I thought I heard something. I was satisfied that I heard a car coming from the direction of town, going south. At that time I was off the end of the sidewalk, out in the street. I kept on walking, and looked around to see if I could see the head light of the car. I thought I seen the headlight, and also other lights; but I tried to get my eyes trained on it, fastened upon the headlight of the street car, and I did not see anything so close to me that I thought there was any

danger, and so I straightened up again and about that time I was on the street car track, and as I glanced ahead I saw a very short distance from me a street car, and I thought I could make it, and I tried to jump like this, and at the same time she struck me, and she rolled me over, and I landed on my arms underneath. I looked southward all the time I was walking on the sidewalk, and saw no street car up to the time I started to turn out across the street. There was a street light at the place I turned to go across, and a path at that point. * * * When I looked towards the north, thinking I heard a street car, I was between the sidewalk and the end of the fence; started off the sidewalk. I was walking across over to * * * aiming to get to that sidewalk over there on the other side. I do not remember anything further until two policemen picked me up in the car at the Interurban Depot. * * * It must be 4½ miles from where I left Fifteenth street to the place where I was injured. It is a block from Sixty-First street to the fence. As I got to Sixty-First street I thought I saw a swinging light on the switch. I did not see any car, but the light must have been from the car. I did not see a car at any time coming from the south, until she was as close as you are to me. My view was obstructed by the orchard and the fence. Q. Did you, at any time from the time you went out back of that fence out into the street, look to see whether a car was coming from that direction, or not? A. No, sir; I looked the other way, as I thought that I heard a car coming up the other way. Q. Where were you when you looked for the car coming the other way? A. I was leaving the sidewalk to go out into the street. Q. You were leaving this cement sidewalk? A. The end of the cement sidewalk; yes, sir. Then I looked down towards Tacoma and thought I saw a headlight. I tried to be sure of it, and kept on walking, and then turned around up the other way, as I thought that car was not close enough to hurt me anyhow, and then I got my eye on this other car. Q. When did you hear the blast of the whistle? A. Probably one-half way between Sixty-First street and the fence. Q. Where did that come from? A. It sounded from the south, Alki switch. Q. You heard the blast of a whistle halfway between Sixty-First street and the fence? A. Just about. Q. Then you knew the car was coming? A. I thought the car was going to stay there on account of another car coming up. Q. You knew what the blast of the whistle of a street car means? A. I thought it meant to stop. Q. Did you ever hear a street car give a whistle when it was going to stop? A. For another car behind it. Q. Why did you look towards the city when you heard the whistle at Alki switch? A. I thought there was a tripper behind the one coming on south. I thought the car was coming and was going to stay there on account of another car coming up. I thought the whistle meant to stop. I looked towards the city when I heard the whistle at Alki switch, because I thought there was a tripper behind the one coming on south. Q. You did not pay any attention at all to the whistle? A. I did, sir. Q. What did you do? A. I looked for the car coming. Q. Did you look in the opposite direction? A. I did, sir, because I thought this meant for the car coming from the opposite direction. Q. What kind of a whistle? A. Just one short blast. I think the edge of the fence is 12 feet from the street car track. Q. Where were you when you were hit by the street car? A. I must have been between the two tracks, and when the— I seen the car, and made a jump, and got just about to the east track there. When I first saw the street car that struck me, it was 10 feet away, and I was about the middle of the car track. I was struck right opposite this fence. The right side of my body was struck by the car. I could not say it was the side, or end, or what part of the car struck me. I did not know anything about the fender of the car. I did not see any headlight on the car. After I left Thirty-Eighth street it was raining a little drizzle."

When the witness spoke of "the two tracks," he probably meant the two *rails,* for it would seem from the record that there was but a single track at the place he crossed. But it distinctly appears from his testimony, as I understand it, that from the time he left the sidewalk and entered the street to cross the track he did not look south until

the car coming from that direction was almost upon him, when he took the chances of crossing ahead of it—the witness saying:

"I did not see anything so close to me that I thought there was any danger, and so I straightened up again, and about that time I was on the street car track, and as I glanced ahead I saw a very short distance from me a street car, and I thought I could make it, and I tried to jump like this, and at the same time she struck me, and she rolled me over, and I landed on my arms underneath."