CHATTANOOGA WAREHOUSE & COLD STORAGE CO *v.* HATTIE A. ANDERSON.*

(*Knoxville.* September Term, 1918.)

1. NEGLIGENCE. Duty to invitee.

Owner, who expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, has duty of being reasonably sure that he is not inviting them into danger, and to that end mut exercise ordinary care and prudence to render the premises reasonably safe for the visit. (*Post, pp.* 293, 294.)

Case cited and distinguished: Bennett v. L. & N. Railroad Co., 102 U. S., 577.

2. NEGLIGENCE. Duty to invitee. Condition of premises.

Duty of owner to keep premises in reasonably safe condition for those impliedly invited thereon extends only to those parts of the premises where person invited is expected to go. (*Post, pp.* 294-296.)

Cases cited and approved: Bedell v. Berkey, 76 Mich., 439; Murray v. McLean, 57 Ill., 378; Bennett v. Butterfield, 112 Mich., 96; Lehman v. Coffee, 146 Wis., 218; Menteer v. Fruit Co., 240 Mo., 177; Schmidt v. Bauer, 80 Cal., 568; Parker v. Publishing Co., 69 Me., 179; Pierce v. Whitcomb, 48 Vt., 129; McCarvell v. Sawyer, 173 Mass., 540; Cowen v. Kirby, 180 Mass., 505; Phillips v. Library Co., 55 N. J. Law, 307; Ryerson v. Bathgate, 67 N. J. Law, 337; Shaw v. Goldman, 116 Mo. App., 332; Ferguson & Palmer Co. v. Ferguson (Ky.), 114 S. W., 297; Zoebish v. Tarbell, 10 Allen (Mass.), 385; Stamford Oil Mill Co. v. Barnes, 103 Tex., 409; New York Lubricating Oil Co. v. Pusey, 211 Fed., 625.

Cases cited and disapproved: Indameur v. Dames, 19 Eng. Rul. Cas., 64; Pauckner v. Wakem, 231 Ill., 277; Glaser v. Rothschild, 221 Mo., 186; Pelton v. Schmidt, 104 Mich., 345.

*For authorities on the question as to whether one who goes upon property on business with the owner is deprived of the right to protection against defects by the fact that he temporarily turns aside to pursue a purpose of his own, see note in 14 L. R. A. (N. S.), 1119.

3. **NEGLIGENCE.** Unguarded elevator shaft. Liability of owner for injuries.

Storage company, having adjoining building being constructed by contractor, owed concrete inspector, employed in the construction of adjoining building, no duty of keeping its wareroom in reasonably safe condition, though inspector frequently consulted with president of storage company, and occasionally transacted business with him in the office of the storage company, where he had never been invited into, and had no business to transact in, the wareroom. (*Post, p.* 296.)

4. **NEGLIGENCE.** Theory of.

The theory of all negligence cases is that the defendant has violated some legal duty he owed plaintiff. (*Post, p.* 296.)

Case cited and distinguished: Williams v. Nashville, 106 Tenn., 538.

---

FROM HAMILTON.

---

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— Hon. NATHAN L. BACHMAN, Judge.

STRANG & FLETCHER, WILLIAMS & LANCASTER and BROWN, SPURLOCK & BROWN, for appellant.

TATUM, THACH & LYNCH and COGSWELL & FLETCHER, for administratrix.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

A. S. Anderson, the husband of the defendant in error, on October 23, 1916, fell through an open eleva-

tor shaft, located in the building occupied by the plaintiff in error, in Chattanooga, and received injuries, from which he died in a few hours.

Suit was instituted to recover damages therefor, and a verdict of $20,000 was rendered by the jury, upon which judgment was entered, after a motion for a new trial had been overruled by the court.

Upon appeal this judgment was reversed by the court of civil appeals, and the suit was dismissed; motions for peremptory instructions having been made in the lower court. The case has been brought to this court by writ of. *certiorari.*

The plaintiff in error operated a warehouse and cold storage plant in Chattanooga in a building owned by the Stone Fort Land Company. Mr. Theodore King was president and general manager of the storage company. This building extended one hundred feet from east to west, eighty feet from north to south, and was six stories in height. The south fronted on the street, and had a platform on a level with the first floor. There was a large door on the south side, about the middle of the building, and goods received by wagon or truck, for storage, were unloaded on this platform and conveyed into the building through this large door.

The office was located in the southwest corner of the building, on the first floor, and was partitioned off from the wareroom proper. There was a door leading from the office into the wareroom, a door leading from the platform into the office, and steps leading from the street up to the platform, about opposite the office door.

The business of the storage company had grown to such proportions that the building occupied by it was

insufficient to take care of its business, so that, on September 20, 1916, it entered into a contract with the Stone Fort Land Company, by which the latter was to erect a building east of and adjoining the old building, and lease same to the storage company for a term of years. The new building was to be one hundred by one hundred eighty feet, to be four stories high, and was to be constructed of reinforced concrete. The plans and specifications for the new building were agreed upon and made a part of the contract between the storage company and the land company. The contract for the erection of the new building was let by the land company to T. S. Moudy & Co. Mr. McDavity was the superintendent in charge of the construction, W. C. Spiker was the inspector of the concrete work, and said A. S. Anderson was the inspector under Mr. Spiker. W. T. Downing, the architect, had general supervision of the entire work. None of these parties were in the employ of the storage company, and this latter company had nothing to do with the erection of the new building, the supervision of the work, or the workmen, and was not to be consulted about anything connected therewith.

Mr. King, the president and general manager of the storage company, was frequently about the new building discussing it with the workmen, and he says that his purpose in this was to see that a good building was erected in accordance with the specifications, since he was to occupy the building.

Mr. Anderson was on the work from ten to fifteen days before he was killed. During that time he had frequent conversations with Mr. King, where the new

building was being erected, several times in the office of the old building, and he and Mr. King were seen in the office several times engaged in conversation with blueprints before them.

Mr. King testifies that, according to his recollection, they never discussed the plans or the construction of the new building in the office, but that on several occasions some one did call Mr. Anderson over his telephone, and that he would send for Mr. Anderson, who would come to the office and talk over the telephone.

So far as the record shows, Mr. Anderson, prior to the day of the injury, had never been in any part of the storage company's building, except the office.

Mr. King testifies, without contradiction, that all business with the storage company was transacted in the office; that no one, except the employees, was permitted to enter the wareroom, with the further exception that customers having goods stored there were permitted to inspect same, when accompanied by some employee of the company; that he had never invited Mr. Anderson into the wareroom, and that he had never seen him in any part of the building other than the office.

About 4:30 or 5 o'clock on the afternoon of the accident Mr. Anderson and Mr. King were engaged in a conversation about the middle of the new building. Mr. King returned to the old plant. There is a dispute as to whether he was in the office or in the wareroom, when Mr. Anderson came to the old building some twenty or thirty minutes later. Mr. Anderson spoke to one Lowe, an employee of the Hamilton Produce Company, who was unloading some barrels of cabbage at the large

door on the south side, and asked if he knew where Mr. King was, to which Lowe replied that he thought Mr. King was in the back end of the wareroom. There is nothing in the record to show the purpose for which Mr. Anderson wanted to see Mr. King. However, it has been assumed by counsel that he wanted to see him about the construction of the new building. The elevator shaft was about twenty-five feet from this large door, and some ten or twelve feet from the door leading from the office into the wareroom. Lowe did not notice whether Mr. Anderson entered through the large door directly into the wareroom, or entered the wareroom through the office. In a few moments a cry for help was heard, and it was discovered that Mr. Anderson had fallen through the elevator shaft to the basement. The elevator shaft was unguarded and the wareroom was dark.

Under this state of facts, is the storage company liable for the injury suffered by Mr. Anderson resulting in his death?

The general rule is succinctly, but accurately, stated by Mr. Cooley in his work on Torts (page 604, 607), and approved by the supreme court of the United States in *Bennett* v. *L. & N. Railroad Co.,* 102 U. S., 577, 26 L. Ed., 236, as follows:

"When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

It is not insisted that Mr. Anderson was on the premises by express invitation; it therefore becomes necessary to determine whether he was there by implied. invitation.

Implied invitation is thus defined by Shearman & Redfield on Negligence (6th Ed.), section 706:

"Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise."

The great weight of authority, however, qualifies this definition of implied invitation by providing that where one goes upon the premises of another, for any of the purposes stated above, he must confine himself to such parts of the premises as are included in the invitation. Such implied invitation does not involve in its scope such parts of the establishment to which the public is not invited. It is only those parts of the premises where the person invited is expected to be that the owner is required to keep in a reasonably safe condition.

As stated by one writer, operators of factories and mills do not impliedly invite customers into parts of their plants where the machinery is being operated, hotel keepers do not invite guests to their engine rooms, and carriers do not invite passengers to the many places not fitted up for their use. The foregoing conclusion is supported by the following authorities: *Bedell* v. *Berkey*, 76 Mich., 439, 43 N. W., 308, 15 Am. St. Rep., 370; *Murray* v. *McLean*, 57 Ill., 378; *Bennett* v. *Butter-*

*field,* 112 Mich., 96, 70 N. W., 410; *Lehman* v. *Coffee,* 146 Wis., 218, 131 N. W., 362; *Menteer* v. *Fruit Co.,* 240 Mo., 177, 144 S. W., 833; *Schmidt* v. *Bauer,* 80 Cal., 568, 22 Pac., 256, 5 L. R. A., 580; *Parker* v. *Publishing Co.,* 69 Me., 179, 31 Am. Rep., 262; *Pierce* v. *Whitcomb,* 48 Vt., 129, 21 Am. Rep., 120; *McCarvell* v. *Sawyer,* 173 *Mass.,* 540, 54 N. E., 259, 73 Am. St. Rep., 318; *Cowen* v. *Kirby,* 180 Mass., 505, 62 N. E., 968; *Phillips* v. *Library Co.,* 55 N. J. Law, 307, 27 Atl., 478; *Ryerson* v. *Bathgate,* 67 N. J. Law., 337, 51 Atl., 708, 57 L. R. A., 307; *Shaw* v. *Goldman,* 116 Mo. App., 332, 92 S. W., 165; *Ferguson & Palmer Co.* v. *Ferguson* (Ky.), 114 S. W., 297; *Zoebish* v. *Tarbell,* 10 Allen (Mass.), 385, 87 Am. Dec., 660; *Stanford Oil Mill Co.* v. *Barnes,* 103 Tex., 409, 128 S. W., 375, 31 L. R. A. (N. S.), 1218, Ann. Cas., 1913A, 114; *New York Lubricating Oil Co.* v. *Pusey,* 211 Fed., 625, 129 C. C. A., 88; Thompson on Negligence, sections 988, 990.

The defendant in error relies on the following cases as holding to the contrary, to wit: *Indameur* v. *Dames,* 19 Eng. Rul. Cas., 64; *Pauckner* v. *Wakem,* 231 Ill., 277, 88 N. E., 202, 14 L. R. A. (N. S.), 1118; *Glaser* v. *Rothschild,* 221 Mo., 186, 120 S. W., 1, 22 L. R. A. (N. S.), 1045, 17 Ann. Cas., 576; *Pelton* v. *Schmidt,* 104 Mich., 345, 62 N. W., 552, 53 Am. St. Rep., 462.

These latter cases can be distinguished from those cited above; but, even if they are in conflict, we think the former carry the decided weight and announced the more reasonable and just rule.

Conceding that Mr. Anderson was seeking Mr. King on business, and that he transacted business with him before in the office of the storage company, there is noth-

ing in the record to even suggest that he was ever invited into the wareroom, or that it was even suspected by the company that he would come into that private room, a place not open to the public, dark, unlighted, a part of the establishment he had never entered before.

We are unable to see upon what theory it could be held that the storage company was obligated or owed any duty to Mr. Anderson to keep its wareroom in a safe condition.

The theory of negligence was well stated by this court in *Williams* v. *Nashville,* 106 Tenn., 538, 63 S. W., 233, the court saying:

"For the theory of all negligence cases is that the defendant has violated some legal duty he owed plaintiff. So where such duty does not exist, however unfortunate the injury may be, and free from negligence, yet he must alone bear the consequences; he cannot impose them upon one under no obligation in law towards him, save not to inflict, directly or indirectly, wanton injury upon him."

We think that the court of civil appeals was correct in holding that Mr. Anderson entered the wareroom of the storage company without invitation, either express or implied, and that the storage company owed him no duty to keep said place safe.

It results that the judgment of the court of civil appeals is in all things affirmed.