WILLIAM J. REARDON *v.* EXCHANGE FURNITURE STORE, INC., a corporation of the State of Delaware.

(*February* 21, 1936.)

HARRINGTON, J., sitting.

*C. Edward Duffy* for plaintiff.

*James R. Morford* for defendant.

Superior Court for New Castle County, Action on the case for negligence, No. 273, September Term, 1934.

HARRINGTON, J., delivering the opinion of the Court:

The plaintiff's claim is based on the alleged negligence of the defendant company. In order to sustain that claim, it must, therefore, appear that he produced evidence at the trial tending to show that his injuries were caused by the violation of some legal duty owed to him by that company. *Garber v. Whittaker*, 6 *W. W. Harr.* (36 *Del.*) 272, 174 *A.* 34; *Diver v. Miller*, 4 *W. W. Harr.* (34 *Del.*) 207, 148 *A.* 291.

It is true that when he was injured he was on the defendant's premises. It is, also, true that in the first instance he had come on, at least, a portion of those premises at the invitation of the defendant, for the purpose of carrying out a particular contract with that company.

This may not be of any great importance, but the precise method of performing that contract was entirely within the control of the plaintiff; by reason of that fact, it is, therefore, conceded that the position of the plaintiff was that of an independent contractor, rather than an employee of the defendant company. *Prest-O-lite Co. v. Skeel*, 182 *Ind.* 593, 106 *N. E.* 365, *Ann. Cas.* 1917A, 474; 31 *C. J.* 473.

As the plaintiff was on the premises of the defendant company at its invitation, though for a particular purpose, it was the duty of that company to use ordinary and reasonable care to see that such portions of those premises as would naturally and ordinarily be used by the plaintiff in performing his contract, were in a reasonably safe condition for their contemplated use by him for that purpose. *New York Lub. Oil Co. v. Pusey* (*C. C. A.*), 211

F. 622; *Thompson v. Cooles*, 7 *W. W. Harr.* (37 *Del.*) 83, 180 *A.* 522, 526; *Newingham v. J. C. Blair Co.*, 232 *Pa.* 511, 81 *A.* 556; *Sutton v. Lerner Stores Corp.*, 162 *A.* 645, 10 *N. J. Misc.* 1126; 21 *A. & E. Ency. of Law* (2d *Ed.*) 471; *Restat. of Law of Torts, Vol.* 2, § 322; *Cooley on Torts* (3d *Ed.*) 1259.

■ In his work on torts, Judge Cooley aptly said:

"When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Cooley on Torts* (3d *Ed.*) 1259, *supra.*

■ In other words, as was said in *Thompson v. Cooles, supra,* when an invitee, without any negligence on his part contributing thereto, is injured on the premises of another, that person is responsible for such injuries as were caused by "defects of which he has actual notice [see also *Leech v. Husbands,* 4 *W. W. Harr.* (34 *Del.*) 362, 152 *A.* 729], and with those [defects] which would have been discovered by a reasonable inspection, 1 *Thompson Neg.*, § 970, 62 *C. J.* 865; but, the duty to inspect must be a reasonable one, such as an ordinarily prudent person would regard as reasonably necessary."

As I have already indicated, however, this rule only applies to such portions of the defendant's premises as it is reasonable to expect that the invited person will use for the purpose of his invitation. *New York Lub. Oil Co. v. Pusey* (*C. C. A.*), 211 *F.* 622; *Cowen v. Kirby,* 180 *Mass.* 504, 62 *N. E.* 968; *Phillips v. Library Co.,* 55 *N. J. Law* 307, 315, 27 *A.* 478.

■ In order for the plaintiff to perform his contract, it was necessary for him to shut off the water connection with the defendant's store, but he was not injured on his trip to the cellar to do this, or while replacing the old

hopper. By his contract, he was, also, required to dispose of that hopper in some manner and was injured while he was attempting to do that. He claims that his attempted disposition of that hopper was eminently reasonable and proper, and that the defendant company should have anticipated that he would put it in the cellar and would, therefore, have to use the cellar stairway in their store building for that purpose.

He further contends that his injuries were wholly due to the negligence of that company in permitting an obstruction on the second step from the top of that stairway, and, also, in making no provision to light it; and that the responsibility of the defendant company was, at least, a jury question.

The defendant company, on the other hand, denies that it owed any duty to him at the time he was injured, no matter what the condition of the cellar stairway was at that time.

In this connection, it contends that under the facts proved, the use by the plaintiff at that time and on his own volition of that portion of its premises was wholly unreasonable and improper and could not have been anticipated by it.

That company further claims that if there were any negligence, whatever, on its part, that the plaintiff was, as a matter of law, so clearly guilty of contributory negligence in attempting to use an unlighted cellar stairway, with a dangerous object, like a cracked hopper, in his arms, that he cannot recover; and that in either aspect of the case a directed verdict for the defendant was proper.

In many, if not in most cases of this nature, the alleged

negligence of the defendant is a question of fact for the jury to determine. *Phillips v. Library Co.*, 55 *N. J. Law* 307, 27 *A.* 478.

Under the facts proved in this case, it would seem, however, that it could properly be said, as a matter of law, that the defendant company had absolutely no reason to anticipate that the plaintiff would attempt to take the cracked hopper into the cellar; and none of the cases cited by the plaintiff are inconsistent with this conclusion.

His contract did not expressly provide for the disposition of the old hopper in that manner, and he was not directed to take it there.

It might fairly be said that the defendant company might have assumed that he would take it to the loading platform in the garage and leave it there, or, perhaps, that he might take it to some other place in the garage, but not to the cellar.

The only reason given by the plaintiff for not leaving it on the loading platform was that he only found crates of furniture there, and no rubbish, whatever.

True, after crossing the loading platform and, apparently, after going down the four or five steps from that platform to the garage floor, he was able, in some way, though he does not explain how, to get to the cellar entrance with the cracked hopper in his arms.

He emphatically stated, however, that, with the exception of the open space left for the defendant's truck in front of the loading platform, the garage was so completely filled with old bed-springs, mattresses, gas stoves, and other articles of second-hand household goods and furniture, that there was absolutely no place there for him to leave the hopper. The space left for the truck could not have been

near the cellar stairway, as the garage door in use, though on the Shipley Street side, was the one nearest the south side of the building.

If all this be true, how could the defendant company have anticipated that the plaintiff, however great an effort he might make, could possibly take the cracked hopper across that garage to the cellar entrance? This is the picture painted by the plaintiff himself, and, in view of the condition of the garage, the fact that there were pieces of broken furniture and old crates in the cellar doesn't make it any more reasonable to assume that the defendant should have anticipated that the plaintiff would attempt to take the old hopper there.

The unreasonableness of the plaintiff's contention is further emphasized by his testimony that the cellar stairway was dark, and that it had no light on it.

It is true that the defendant company must have known that it would be necessary for the plaintiff to go down the cellar to turn off the water, and that he would be compelled to use the particular stairway for that purpose; but getting to that stairway, for that purpose, with nothing in his arms, even though by crossing the garage, was a very different proposition from getting to it under the conditions portrayed by the plaintiff, with a cracked hopper in his arms.

The plaintiff's motion for a new trial is, therefore, refused; and having reached that conclusion on the grounds already stated, it is unnecessary for me to consider whether his right of action is, also, so clearly barred by contributory negligence that it is not even a jury question.