## ROSENBAUM *v.* SHOFFNER.

### (*Jackson.* April 21, 1897.)

1. EVIDENCE. *Of situation of premises after accident.*

   It is competent for witnesses to testify that when they visited the store on the day after an accident from falling into an elevator well, no guard rail was there, and that they asked for it to inspect it, and searched for it, but could not find it, where the defendant claimed, at the time. that there was a guard rail, and that it was broken at the time of the accident. (*Post, pp. 628, 629.*)

2. NEGLIGENCE. *Proximate cause of injury.*

   The negligence of the proprietor of a store in failing to guard an elevator shaft, and not the stumbling of the customer, is the proximate cause of the death of a customer from falling into the shaft, after stumbling over a platform upon which the goods which he was inspecting were displayed in close proximity to the shaft. (*Post, pp. 629, 630.*)

   Cases cited and approved: Postal Tel. Co. *v.* Zopfi, 93 Tenn., 374; Anderson *v.* Miller, 96 Tenn., 45.

3. SAME. *Rendering proprietor of store liable to customer falling into elevator shaft.*

   The proprietor of a store is guilty of negligence rendering him liable for the death of a customer, who was free from contributory negligence, by falling into an elevator shaft located in close proximity to the place where he was inspecting goods, in failing to protect the shaft, or in using a guard rail for that purpose which was so manifestly defective as to be no protection to one who might fall against it without extraordinary force. (*Post, pp. 630–633.*)

4. SAME. *Customer visiting store not guilty of, when.*

   A customer on his first visit to a store, who is unfamilar with the surroundings, may, without imputation of negligence, rely upon the safety thereof. (*Post, pp. 633, 634.*)

   Cases cited and approved: 127 Ind., 1; 154 Mass., 599.

5. VERDICT. *Not set aside as excessive, when.*

A verdict of $10,000 for the death of a man fifty-seven years old, in good health, strong and vigorous, having an expectancy of over sixteen years, according to the tables of mortality, and earning about three or four hundred dollars a month, will not be disturbed, on appeal, as excessive, although, as the result of obligations he had been obliged to pay as surety, he had failed in business, and was carrying on trade in the name of his wife. (*Post, pp. 634, 635.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

L. & E. LEHMAN for Rosenbaum.

WATSON & FITZHUGH for Shoffner.

WILKES, J. This is an action for damages for the death of the plaintiff's husband. There was trial before the Court and jury, and a verdict and judgment for $10,000, and the defendant has appealed, and assigned errors. The facts, so far as material, are that the plaintiff's husband, Daniel P. Shoffner, went into the storehouse of the defendant, Rosenbaum, on Main Street, in the city of Memphis, for the purpose of making some purchases, and was examining a base burner stove, and talking about its cost with a salesman or clerk. He was estimating the quantity of pipe that would be required to set it up, and, in doing so, walked back, and

14 P—40

looked up at the wall to estimate the distance. The stove was upon a platform raised up from the floor some thirteen inches, and was twenty-four inches wide, upon which it had been placed for exhibition, the western end of the platform coming up to the elevator opening, the north side of the platform being on a line with the south side of the elevator. Furniture was stored around the platform so that the stove could be examined only on the south and west sides. When deceased started to walk back, looking at the stove, he was about four feet from the elevator. He struck his foot against the edge of the platform, and stumbled, and fell into the cellar. The elevator was not running at the time, and the platform was on the cellar or basement floor. The evidence is that it was out of fix. There is quite a controversy as to how the elevator shaft was protected. Several witnesses state that the opening was protected by a guard rail. This guard rail is described by the principal witness of the defense, one of the defendant's employees, as an elm slat or rail $\frac{7}{8}$ by $3\frac{1}{2}$ inches. This witness says he procured the rail; that he did not select it; that it was all he had at the time, and he used it, and it was sufficient for what he wanted it for; that it was a slat that had been used in packing furniture, and might have been weather cracked; that a knot just where it broke might have weakened it some, but not to any great extent. There is some discrepancy as to how this guard rail was placed, whether

inside or outside of the opening. It was put on wooden cleats. There is testimony that one of these cleats was broken by the fall of the deceased, and other testimony that neither one of them was broken. The testimony shows that the rail was some six to ten inches inside of the elevator and about three to four feet up from the floor.

Cox and Kehoe, two witnesses, went to the place the day after the accident, and inquired, among other things, for the guard rail, and was told by defendant that he did not know where it was; that it was laying around somewhere in the cellar, and they went with a porter into the cellar and struck some matches and looked for it, but were unable to find it. Before leaving the store the witness, Cox, said to defendant that he had better find the guard rail, or he might have a suit on his hands. They left, and afterwards came back on the same forenoon, and asked defendant if he had found the bar, and he said no. In the afternoon, as they were passing the place, defendant called them in and said he had found it.

Mr. Sauer, the principal witness for defendant, states that after the accident he found the guard rail—part of it on the elevator floor, and the other piece near it in the cellar.

The jury, on defendant's application, were allowed to visit and inspect the premises.

The deceased was a strong, active business man, fifty-seven years of age, engaged in the lumber busi-

ness, having a wife and two daughters, and earning some $300 or $400 per month, and his expectancy was something over sixteen years, according to the mortality tables. The evidence is quite indefinite as to how the guard rail was placed on the elevator, and when and how it was found after the accident. There was testimony going to show that after the accident a piece of plank some eight or ten inches broad was fastened on the elevator in such a way as to close up the space between the edge of the elevator and where the guard rail was placed, and some evidence that the posts. were either changed or new posts put into the elevator frame. The evidence is quite indefinite as to whether the deceased was walking backward or not when he stumbled, and some uncertainty as to whether he fell into the elevator backward or not. The witnesses who were present say that he walked back to look at the stove, but they do not use the term backward, except that they state, with more or less distinctness, that he fell backward. There is some doubt from the proof as to how light it was about the mouth of the elevator.

It is said that it was error to allow Cox and Kehoe to state that when they visited the store on the day after the accident no guard rail was there or could be found. This objection is based upon the ground that it gave the condition of things in the store after the accident, which could not illustrate the condition at the time of the accident, but

was calculated to impress the jury that there was no guard rail there when the accident occurred.

We think this evidence was not incompetent. These witnesses went to the place to examine the surroundings and see how the accident happened. It was claimed by the defendant at the time that the deceased fell against the guard rail and broke it, and they thereupon asked for the guard rail to inspect it, and made search for it with the results stated. There is no claim that a new guard rail had been substituted, and the evidence is merely a narrative of the condition of things and the surroundings when the witnesses examined the place. It was not claimed that the rail had been renewed or a new one procured, or that any change had been made in the surroundings, but the tendency of all the evidence was that it was then in the same condition as when the accident occurred.

It is assigned as error that the Judge should not have said to the jury that "if the cause of the injuries sustained by deceased was his accidently stumbling against the platform in Rosenbaum's store, and that notwithstanding his fall he would not have been injured and killed had it not been for the existence near the platform of an elevator shaft or opening which defendant had negligently failed to provide with sufficient ordinary guard, that such a condition of things would make defendant liable."

This is not the exact language of the whole of the charge as given, but the Court added: "If you

find these facts, then you are instructed that the proximate cause of the injury and death of the deceased was the negligence (if such you find) of the defendant in failing to guard said elevator shaft or opening into which the deceased, Shoffner, fell, and not the fall caused by stumbling over said platform, your verdict should be for the plaintiff.''

This, we think, is a correct exposition of the law. The stumbling on the platform was the cause of the fall, but it might not have been injurious but for the open elevator shaft, and if that was negligently left open, and in consequence the deceased was killed, the defendant would be liable. *Postal Telegraph Co.* v. *Zopfi*, 9 Pickle, 372–375; *Anderson* v. *Miller*, 12 Pickle, 45.

The fourth assignment is based upon that portion of the Judge's charge in which he tells the jury that if they find from the evidence that the elevator of the defendant was not such as an ordinarily prudent man, exercising ordinary care, would have had, or that an ordinarily prudent man exercising ordinary care, would have had more light, or that the guard rail was not sufficient for all ordinary purposes, then to that extent the defendant must be held negligent, and liable for whatever injury resulted from the negligence.

It will be noted that the trial Judge limits the defendant's liability to injuries resulting only from negligence in any of the particulars named. He was speaking at the time of the general surroundings

about the elevator. The jury were not warranted in supposing that the learned Judge meant that the most approved patent of an elevator should be used, but that, in its construction, location, and surroundings, as well as the manner in which it was guarded by rail, there should be no negligence which contributed to the injury to plaintiff. The important point was kept before the jury, did the construction, location, or manner of guarding the elevator cause the injury?

It is said that the charge virtually. instructs the jury to find for the defendant in any event. We do not so read the charge, but, on the contrary, the Court said to the jury, among other things: "The law holds no one responsible for exposing himself to a danger of which he knew nothing, and could know nothing by the exercise of ordinary care, and of which he was under no obligation to inform himself. But whatever was in plain view and could readily be seen he must see or must take the consequences." Again, the jury were told "that if Shoffner, while examining the stove, was moving backwards, when he accidentally stumbled and fell against the guard rail and into the cellar below, and by the fall received injuries from which he died, there can be no recovery." And again: "If you find from the evidence that an ordinarily careful and prudent man, placed under the same circumstances that the evidence shows surrounded Mr. Shoffner, would have seen and known the whereabouts of

the stove, platform, and elevator, and its condition, then the law says that Mr. Shoffner saw and knew its condition. So that, after he saw the condition of the elevator and things about it, or as an ordinarily prudent man ought to have seen them, if you find that he accidentally stepped into the elevator opening, then this was such an act of negligence on his part as would defeat the widow's right of recovery in this case." And again, "if he knew or ought to have known the condition of the elevator and its surroundings, and you find that he accidentally stumbled and fell backwards into the elevator, this would be an unavoidable accident as far as D. P. Shoffner was concerned and would not make the defendant, Morris Rosenbaum, liable for the fall into the elevator and its consequences, unless the evidence establishes the fact that he failed to do what ordinary care and prudence suggested ought to have been done." Under the charge of the Court the jury could have found no verdict against defendant except upon the theory that he was guilty of negligence.

The question, on its merits, mainly turns upon the sufficiency or insufficiency of the guard rail or protection to the elevator, and whether there was such guard rail. If the rail or protection had been strong enough to guard against reasonable contingencies and probabilities, then defendant ought not to have been held liable, but, if there were no guard rail, or one so manifestly defective as to be no

Rosenbaum *v.* Shoffner.

protection to one who might press against it, or be thrown against it without negligence on his part, then there can be recovery. It could not be required to stand against extraordinary blows or assaults upon it, but, at the same time, its object and purpose was to prevent persons from incautiously stepping or falling into it, and from being thrown into it by any misstep, jostling, or other accident not of an extraordinary character and not the result of negligence.

The evidence in the case does not show that the guard rail was sufficient for ordinary purposes in preventing accidents and injuries, but that it was a mere makeshift, a slat that had been used in packing furniture, and which was used because there was nothing better at hand. It was exhibited to the jury, and they were thus enabled to pass intelligently upon its sufficiency. The Court, upon this point, charged that, "by a sufficient guard rail is meant such an one as is reasonably secure, and will render the shaft and opening reasonably safe under all ordinary circumstances."

It is said there is no evidence to sustain the verdict. It is necessary only to add to what has been said, that there is no evidence that deceased had his attention called to the elevator or that he saw it, and the evidence is conflicting as to the quantity of light at the point. It was the first visit of deceased to the store, and he was not familiar with the surroundings. If his attention had been called

to it, it is probable the accident would not have occurred. He had a right to rely upon the safety of his surroundings. *Brosman* v. *Sweetser*, 127 Ind., 1; *Hendrickson* v. *Meadows*, 154 Mass., 599.

In the leading case of *Inderman* v. *Dames* (Law Rep.), 1 C. P., 274, and 2 *Ib.*, 313, the Court, referring to persons who visit premises on business which concerns the occupier and upon his invitation, express or implied, said that it was settled law that a visitor of that class, using reasonable care on his part for his own safety, is entitled to expect that the occupier shall, on his part, use reasonable care to prevent damage from unusual danger, which he knows, or ought to know, and that where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding, or otherwise, and whether there was contributory negligence in the person injured, must be determined by a jury as a matter of fact. See, also, *Bennett* v. *Railroad Co.*, 102 U. S., 580–583.

It is said the verdict is excessive. The deceased was fifty-seven years of age, a man of good health, strong and vigorous, with an expectancy of over sixteen years, according to the tables of mortality, and earning, according to the evidence, about $300 to $400 per month.

It is argued that his earning capacity was over-rated; that he had failed in business, and was carrying on trade in the name of his wife. All these

Rosenbaum *v.* Shoffner.

matters were submitted to the jury under a charge which, upon this feature, is not excepted to. There was proof that his financial misfortunes were not the result of mismanagement, but of debts and liabilities which he incurred and had to pay as surety for others.

We see no error in the judgment of the Court below, and it is affirmed with costs.