### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

### APRIL TERM, 1922.

---

BUCKEYE COTTON OIL CO. *v.* ANTONIO CAMPAGNA.

## (*Jackson.* April Term, 1922.)

1. **NEGLIGENCE.** Firemen responding to call invitees.

City firemen coming to a fire on premises outside of city ·at request of owner, but under no duty to do so, are not mere licensees, as when attending fire in city, but invitees, as regards the duty owing to them by such owner, relative to his liability on the ground of negligence for injury in fighting the fire. (*Post, pp.* 393, 394.)

Case cited and approved: Burroughs, etc., Co. ·v. Fryar, 132 Tenn.. 612.

2. **NEGLIGENCE.** Duty to invitees stated.

The owner of premises must use reasonable care to see that it is safe to those whom he invites there, and if there are dangers there not obvious to them, of which he knows, or with reasonable care should have known, it is his duty to give warning thereof. (*Post, p.* 394.)

Cases cited and approved: Chattanooga Warehouse, etc., Co. v. Anderson, 141 Tenn., 288; Clapp v. La Grill, 103 Tenn., 164; Rosen baum v. Shoffner, 98 Tenn., 624; Hines v. Willcox, 96 Tenn., 328:

3. **NEGLIGENCE.** Mill owner under no duty to notify firemen of pipe on roof.

The owner of a mill in the country, inviting experienced city firemen under the direction of the chief to help put out a fire in a shed thereof, is under no duty to warn them of a large heavy iron pipe on the roof; it being something that a casual observance would disclose, if it was not concealed by the smoke, and heavily burdened roofs being a thing that experienced firemen should except to encounter. (*Post, pp.* 394-396.)

4. **NEGLIGENCE.** Verdict cannot be based on conjecture.

A verdict for negligence cannot be based on a conjecture, as to whether fall of a burning shed let down a pipe thereon, or fall of the pipe knocked down the shed. (*Post, pp.* 396, 397.)

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. J. P. YOUNG, Judge.

EWING, KING & KING and A. B. KNIPMEYER, for plaintiff.

HOLMES & CANALE and WILSON & ARMSTRONG, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the administrator of Frank Campagna, deceased, to recover damages for the death of the latter, which occurred at the plant of the plaintiff in error, Buckeye Cotton Oil Company. There was a judgment for the plaintiff below. On appeal this judgment was reversed by the court of civil appeals for errors in the charge of the trial judge, and the case was remanded for

a new trial.    Both parties filed petitions for *certiorari.*
The plaintiff in error insists, among other things, that its
motion for a directed verdict in its favor should have been
sustained by the trial court, and that the court of civil ap-
peals erred in not so holding.    The defendant in error con-
tends that the court of civil appeals erred in failing to
affirm the judgment below.

The plaintiff in error is a manufacturer of cotton seed
oil, and has a large mill about two miles outside of the
corporate limits of Memphis.    The deceased was a member
of the Memphis Fire Department, and met his death while
he and his associates were fighting a fire on the premises of
the plaintiff in error in September, 1918.

The fire was in a wooden seed house or shed.    Projecting
on either side of the main house was a shed roof, under
which a railroad track was laid, and cars were run along
this track and under the projecting shed to be loaded and
unloaded.    The exact width of this projecting shed does
not appear, but it was wide enough to cover an ordinary
box car and high enough from the ground to permit the
passage under it of such a car.    The seed house and project-
ing shed were about two hundred and fifty feet long.    The
projecting shed was constructed somewhat after the style
of an awning.    It had no supports from the ground along
its outer edge.    The timbers supporting the roof of the
shed rested on the wall plate of the wall of the seed house,
and extended into the seed house, and were nailed to the
timbers which supported the roof of the seed house.    The
timbers supporting the roof of the projecting shed were
also supported by braces placed at an angle of 45 degrees
with the upper ends of the braces against these timbers and
the lower ends nailed to the upright studding of the wall
of the seed house.

A large iron pipe about ten inches in diameter ran from another seed house on these premises, and passed overhead and through the seed house which burned. This pipe was very heavy. It was twenty-two feet above the ground, and at the burned seed house was supported by a sort of plat form, which rested upon the projecting shed. The pipe then passed on through the roof of the seed house. Before reaching the projecting shed this pipe rested on another seed house. The distance between these two supports was fifty feet. There was no intervening support for the pipe. Proof was introduced tending to show that the construction just detailed was bad construction; that in view of the weight of this pipe there should have been an intervening support along this fifty-foot stretch; and that the absence of such intervening support put undue weight on the seed house which burned and the projecting shed, and made the pipe more likely to fall.

Prior to the accident there had been a smoldering fire in some cotton hulls in the seed house which was destroyed. Employees of the plaintiff in error had been watching this fire. During the night on which the accident occurred the fire got beyond control, and the night watchman at the mill telephoned to the Memphis Fire Department for help. This night watchman, Daniels, also aroused the superintendent of the mill, who lived on the premises, and the latter approved of Daniels' act in calling the fire department.

Daniels assembled a crew of men, and he was joined by one Beasley with another crew of men. Beasley was a mechanic in the employ of plaintiff in error, and was engaged with several men that night in working on one of the boilers at the plant.

All these men under the direction of Daniels and Beasley began fighting the fire before the firemen arrived, and for this purpose some of them went under the projecting shed. Beasley concluded that it was dangerous for the men to stay under this shed, that it was likely to fall, and ordered all the men out from under the shed. The firemen got there about this time.

Two companies from the Memphis Fire Department came out along with Capt. Burke and Capt. Sellas in charge. Chief Fitzmorris and Assistant Chief O'Neil also came out, and were present, directing the operation of the firemen. The firemen went under the shed heretofore described to better reach the fire inside the seed house, and while under this shed almost the entire shed fell, killing Frank Campagna and injuring several other firemen. As heretofore stated, the premises of plaintiff in error were located outside the corporate limits of Memphis. It was no part of the duty of the city fire department to look after fires outside the city limits. As a matter of custom, however, the Memphis Fire Department was in the habit of going to fires outside the corporate limits if their services were not at the time required within the city.

The negligence on which this action is predicated is the defective construction of these premises in not having better supports for the iron pipe mentioned, and a failure on the part of the representatives of plaintiff in error to warn the firemen of the dangerous condition of the shed, incident to the progress of the fire and the overhead pipe.

When firemen or policemen in the course of their duties go upon the premises of an individual, the latter owes no duty to them, except to refrain from inflicting upon them a willful or wanton injury. Under such circumstances,

within the limits of the municipality by which they are employed, firemen and policemen are authorized by law to go upon the premises of any one in the discharge of their duties. The owner cannot prevent their entry, nor can he control their actions while they are there. They are accordingly mere licensees. *Burroughs, etc., Co.* v. *Fryar*, 132 Tenn., 612, 179 S. W., 127, L. R. A., 1916B, 791. The firemen in this case, however, came to the premises of the plaintiff in error upon its request. They were not obligated to go there, nor did they have any right to enter these premises. They were in theory of law subject to control of plaintiff in error while they were there. The reason of the rule just above stated, therefore, fails in this case, and we think the rule has no application. The firemen will accordingly be treated as invitees.

The owner of property must use reasonable care to see that his place is safe for those whom he invites to come there, and if there are dangers on his premises not obvious to such persons of which he knows, or of which with reasonable care he should have known, it is his duty to give warning of such dangers. *Chattanooga Warehouse, etc., Co.* v. *Anderson*, 141 Tenn., 288, 210 S. W., 153; *Clapp* v. *La Grill*, 103 Tenn., 164, 52 S. W., 134; *Rosenbaum* v. *Shoffner*, 98 Tenn., 624, 40 S. W., 1086; *Hines* v. *Willcox*, 96 Tenn., 328, 34 S. W., 420.

There is a difference, however, between inviting a friend into one's residence socially or inviting a customer into one's place of business to trade, and in inviting experienced firemen to help put out a fire in a burning building.

A burning building is not a safe place, and entry into such a place is attended with known dangers. Such dangers are particularly within the knowledge of firemen; who for years have encountered them daily.

When these firemen accepted the invitation of plaintiff in error and went to its premises to fight the fire they took certain chances.    When they went under the shed of the burning seed house we think they took the chance of the shed falling as the ordinary consequence of the fire.    There was nothing unusual in the construction of this seedhouse and shed, leaving the pipe out of consideration; nothing which would render it more dangerous in a fire than many other buildings which all of them had doubtless entered before.    Moreover, the men were under the direction of their chief and other officers possessing broad knowledge of all fire perils.

Under these circumstances, still leaving the pipe out of consideration, we find nothing unusual about the situation which made it necessary for the agents of plaintiff in error to give to these officers of the Memphis Fire Department and their men any warning of danger.    The danger that existed was no doubt more obvious and better appreciated by these firemen of long experience than it could have been by an ordinary night watchman or a simple mechanic.

While there is proof in the record that the manner in which the iron pipe was supported was not good construction, nevertheless it does not appear that the pipe was not sufficiently supported to meet ordinary conditions.    We think there is no evidence indicating that the pipe would have fallen had there been no fire.

The chief and other officers and members of the fire department present on this occasion testify that this pipe caused the shed to fall down.    The employees of the plaintiff in error testify to the contrary, and say that the shed fell because the timbers which supported it were burned

where they projeced into the seed house, and were nailed as heretofore described. The firemen testify that they did not observe this pipe nor appreciate the danger therefrom when they went under the shed.

While the firemen say that the pipe threw the shed down, they do not give satisfactory reasons for this opinion. In fact such statements from them appear to be merely expressions of opinion. Their evidence indicates that the shed came down with a crash, and afterwards the pipe was found to have fallen several feet and to be resting on the wall of the seed house. It is conjectural upon this record whether the fall of the shed let down the pipe or whether the fall of the pipe knocked down the shed, and a verdict cannot be based on a conjecture.

We do not think, however, that this is controlling. It is a common thing for weighty structures to be rested upon the roofs of factory buildings. Large water tanks are frequently so imposed. So are heavy advertising signs, powerful hoisting apparatus, monitor roofs for ventilation, and other things. Tile and slate roofs are of great weight. It seems, therefore, that experienced firemen should expect to encounter heavily burdened roofs in the ordinary pursuit of their calling. There was nothing latent about this pipe. A casual survey of the premises would have disclosed it, unless the smoke of the fire interfered. If the pipe was concealed by the smoke, still it was only such a superimposed burden as might have been expected on the roof, and, if they could not see, the situation demanded the more care from the firemen.

The employees of the plaintiff in error testify that they did warn the firemen that it was dangerous to go under the shed, but that the latter paid no attention whatever to

Buckeye Cotton Oil Co. v. Campagna.

the warning. These employees, however, say that their apprehensions were based on the progress the fire had made, and that they did not regard the location of the pipe as a menace. However this may be, it seems to us that advice from these workmen to the Memphis fire chief on this occasion would have been on a par with a suggestion, say from some French peasant in the neighborhood, to Marshal Foch, as to his plan of battle and the danger incident to the attack, and would have been about as much appreciated.

Reversed and dismissed.