## Suttie v. Sun Oil Company.

*W. C. Brown,* for plaintiff; *Ward C. Henry,* for defendant.

GORDON, JR., J., Feb. 28, 1931.—This case was tried, by agreement of the parties, by a judge without a jury. The testimony is uncontradicted, and the legal question involved is whether, conceding that the negligence of an owner of property causes a fire, a municipal fireman is entitled to recover damages for injuries which he suffers in endeavoring to put out the fire and which result from an explosion on the premises caused by the fire.

On the night of April 27-28, 1930, Frank E. Dickson, an employee of the defendant company, was directed by his superior to go with a tank wagon

containing about 1500 gallons of gasoline to one of the defendant's automobile filling stations located at Stenton and Mount Airy Avenues, in the City of Philadelphia, and to fill the tanks at that station. The station did not remain open after 11 P. M., and when Dickson arrived he found it closed. He was unable to understand a rough diagram of the place with which he had been supplied, showing the location of the intake pipe for the gasoline tanks, and, in searching for it, he came upon the intake for the oil tanks, which were located in the cellar of a small building on the property. Mistaking the oil intake for the gasoline intake pipe, he connected his wagon to the former and proceeded to run gasoline into it. After running in about forty or fifty gallons, he noticed that he could not hear the noise which generally accompanied the running of gasoline into the metal tanks. This was because the oil line had been disconnected from the oil tanks, so that the gasoline was running into the open cellar of the building, where there was at the time a lighted coal stove used for heating purposes. Dickson then went to the back of the building in search of a stick to use in gauging the tanks, and while there heard the noise of breaking glass in the front of the building. Upon hurrying back to the front he saw that a window had been blown or broken out and that smoke was pouring out of the building. This was his first intimation that the stove had ignited the gasoline, which he had been carelessly emptying into the cellar. Realizing the danger, he hastily disconnected his wagon and drove it away to safety and then sought aid in notifying the fire department of the fire. He does not seem to have been present when the firemen arrived, for the plaintiff, who was a fire captain in charge of a squad of men, testified that when he arrived nobody was around and that he, with other firemen, then entered the building. The plaintiff and his companions had been in the single room of which the building consisted for two or three minutes, when, as they were about to descend to the cellar through a trap door in one corner of the room, a violent explosion occurred, which blew one man out of a window and seriously injured and burned the plaintiff and others.

The plaintiff suffered extensive second degree burns of his hands, face and ears, which afterwards became infected and kept him confined, under treatment for his injuries, for about two months. At the end of this period he returned to his duties as a fireman, but was not finally discharged from treatment until a month later. He was under no expense for medical treatment, and at the trial presented no claim for loss of earnings. His only claim for damages, therefore, is for the injuries and the pain and suffering incident to them, together with the fact that, after burns of the character suffered by the plaintiff, the injured parts tend to "break down" in cold weather and to become severely chapped and painful. The recovery of the plaintiff, in view of the extent and gravity of the burning which he suffered, has been excellent. He made no effort to exaggerate his suffering, but there can be no doubt that it was of a most intense and excruciating character, and, in our opinion, the damages which he suffered may fairly, justly and reasonably be placed at the sum of $3500.

These undisputed facts give rise to the question of law already indicated, whether, conceding that the negligence of an owner of property causes a fire, a municipal fireman is entitled to recover damages for injuries which he suffers in endeavoring to put out the fire and which result from an explosion on the premises caused by the fire. There seems to be no authority in this state directly ruling this question. The nearest case upon its facts to the one before us is Drake v. Fenton, 237 Pa. 8, in which a property owner was held liable to a fireman, who had entered a building in the performance of his duty to put out a fire, for injuries sustained by falling down an elevator shaft which had

not been protected by guards and gates as required by an act of assembly. The negligence consisted in the maintenance of a defective elevator on the property in violation of a law enacted for the protection of all users of the premises. The dangerous defect existed independently of the fire and was neither created by nor an incident of it, and the entry of the fireman upon the premises merely brought him within the sphere of its influences and operation. That case is, therefore, clearly distinguishable on its facts from the one before us. So, also, those cases in which police officers, constables and other agents of government lawfully entering upon the property of another are held to be entitled to recover for injuries caused by a defective condition of the premises do not rule the question before us. In such situations, the negligence sued upon does not arise out of the conditions which bring about the entry of the person injured upon the property, and exists as a danger, unknown and, therefore, unassumed, which threatens him regardless of the occasion of his presence within its range.

The authorities outside of Pennsylvania are not in complete accord upon the question before us, although their overwhelming weight is against the right of recovery by a fireman in such a situation as existed in the present case. (See 2 Cooley on Torts, 3rd ed., page 1268; Meiers v. Koch Brewery, 229 N. Y. 10, at pages 12 and 13.) In all of the cases called to our attention, whether in Pennsylvania or outside of this jurisdiction, the decisions seem to have turned upon whether the person injured was a licensee or invitee at the time the injury was suffered. If the former, it is held that no duty, except that of refraining from intentional and wanton injury, rests upon a property owner; while, if the latter, the property owner is held to a certain measure of care to his invitee. Some of the cases view the agent of government who enters premises in the performance of his duties as a mere licensee, while others consider him to be an invitee, and the decision follows the rules as to liability indicated. We are of the opinion that when an officer of government lawfully enters upon the premises of a citizen, he is not a mere trespasser, and that the property owner is not relieved of all duties toward him. However that may be, we do not think the true solution of the question before us lies in a determination of the legal status of a fireman in relation to the owner whose property is entered. It is to be found rather in considerations of public policy and in the purpose, with its accompanying assumptions, with which the entry is made. The dangers incident to a fire and the risks involved in the effort to extinguish it are assumed by a fireman when he enters in the performance of his duty. It is a well known fact that in the great majority of instances fires originate from the negligence of those in possession of property. To impose upon an owner liability for such negligence in favor of those who voluntarily assume all the dangers growing out of so hazardous an occupation, however commendably courageous and disinterested the assumption may be, would inflict an onerous and unfair risk upon one who is deprived of all control over the other's acts, who cannot even prevent him from assuming such risks, who, for the public good, has temporarily lost all control over his property, and who is helpless to protect himself. A police officer who enters a building to make an arrest, an inspector who enters to inspect the condition of the premises, cannot fairly be said to assume the risk of dangers of which he is ignorant, which he has no reason to suspect exist and which are not patently incident to the purpose of his entry. A fireman, however, for the public welfare, goes into the face of a known and obvious danger, and the risks incident to it he must assume.

This position is in accord also with the obvious public policy to which the situation gives rise. An owner, facing knowledge that he risks being mulcted

in damages by those whom he summons to aid in the extinguishment of a fire, would be strongly tempted by self-interest to temporize with the dangerous situation, to adopt his own means of saving his property, and to delay summoning aid until perhaps greater danger would be threatened to the public. To avoid this added public hazard, public policy requires those who, in the service of the state, enter premises to extinguish a fire, to look to their employer for proper compensation for injuries suffered in the courageous performance of their public duties. No other workable rule, it seems to us, can be safely adopted. As was said in Lunt *v.* Post Printing & Publishing Co., 110 Pac. Repr. 203, in which a fireman of the City of Denver, who had entered premises supposed to be on fire and who was injured because of the presence of acid fumes, was denied the right of recovery from the owner: "The rules announced may seem harsh; but they are founded in a public policy for populous districts to which the rights of individuals ought to bend. Fire departments are for the public. The service of its members is purely a public one. It must be so to assure the most effective work in fighting fire. In times of conflagration, or indications thereof, ordinary people lose their power of judgment and are not qualified to direct. Owners of property whereon are indications of fire will and should be, for the time, suspended from control and the trained fireman, as the representative of the public, be in absolute command, unhampered by the wishes or directions of any individual. Firemen must form their judgment quickly from appearances before them and they must swiftly execute this judgment if the best result be reached. Their time ought not to be spent in determining what duties they owe to this or that man. Hence, generally speaking, the law is that, in the discharge of their public duties, they owe no duty to individuals. Their business is to put out fires in the best and quickest way. When they have done this they have performed their duty to the public, to whom alone is any duty due from them. If it be held that duties are due the firemen other than as stated in the quotation from Mr. Elliott's work, this would call for reciprocal duties from the firemen and thus their work would be hampered and their minds diverted by the consideration of their private duties. The help of a fireman is always needed in times of stress and excitement, when dangers surround the fireman on every hand, when quick destruction of life and property is threatened, when the necessities of the case call for cool, quick judgment and swift, untrammeled action. It is better that the situation be not further confused by the consideration of reciprocal private duties. The life of the fireman is an heroic one. Daily, in the discharge of his duties, he performs acts of the truest heroism which go down unheralded and unsung. He consecrates his life to his work, and, when it becomes necessary, unflinchingly offers up, as a sacrifice to the public, his own well-being, his life and the future welfare of his wife and children. The public, to whom he owes this duty and for whom he performs it, owes to him the reciprocal duty of providing generously, in some proper way, by public taxation, for the care and comfort of the fireman and those dependent on him when, in the discharge of his duties, he becomes disabled, and for the care and comfort of his wife and children when he gives up his life for the public."

The reasons thus forcefully stated for the principle under consideration seem to us to be conclusive. Not only does the doctrine of assumption of risk defeat the plaintiff's right in this case, but weighty considerations of public policy prevent the extension of liability by an owner to firemen engaged in an attempt to extinguish fires.

With one exception, the cases cited by the plaintiff in support of the right of recovery here are clearly distinguishable from the case before us upon the

various grounds heretofore noted. In Meiers v. Koch Brewery, *supra*, the fireman was using a private driveway and fell into an open coal hole. Thus the case is analogous to Drake v. Fenton, *supra*, decided by our Supreme Court, and is distinguishable on the same grounds. In Learoyd v. Godfrey, 138 Mass. 315, the plaintiff was a police officer who went on private property to make an arrest; and Parker v. Barnard, 135 Mass. 116, presents similar distinguishing facts. In Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, recovery was permitted by a fireman because his fire company had gone outside of its territory to put out a fire at the request of an owner, and it was held that the fireman went outside as an individual and not as an official, and that, being invited by the owner, the latter owed him certain duties which would not have existed had he been engaged in putting out a fire within his territorial jurisdiction. There the fireman was held to be an invitee, and the case illustrates the underlying reason for the conclusions we have already stated.

The exception referred to above and the case upon which the plaintiff relies most strongly is Houston Belt & Terminal Ry. Co. v. O'Leary, 136 S. W. Repr. 601. In that case a railroad negligently placed a freight car containing fireworks at a place in its yard where it would be subjected to impact from other cars. As a result of concussion a fire broke out in the car after the explosion of part of its contents, and the plaintiff's intestate, the chief engineer of the fire department, approached the burning car to extinguish the fire, and received a serious injury from a further explosion. A recovery was permitted upon the theory that each individual explosion was an independent negligent act, and that the explosion which occurred after the fireman had approached the car was due to a negligent act of the company committed after the fire had started and the injured fireman had arrived on the premises. This reasoning seems to us to be straining for a theory upon which to support a liability. As was said of this case by Prof. Francis H. Bohlen, of the University of Pennsylvania Law School, in a note to an article in the Pennsylvania Law Review of March, 1921, at page 237, entitled "The Duty of a Landowner Toward Those Entering His Premises of Their Own Right:" "It would seem difficult to sustain the court's view that each explosion of fireworks was a new negligent act occurring while the plaintiff, a fire marshal, was on the premises, though the explosions were not caused by any deliberate or negligent act of the defendant done after his entry, but were due to the same preceding negligence which caused the fire which the fire marshal was called to put out and indeed were themselves part of the same fire." We have read the opinion in that case with care and find ourselves unable to follow its reasoning or to accept its conclusions. It is against the trend of the decisions and advances a doctrine which, in our judgment, is unsound and would tend to produce mischievous consequences.

There is nothing in the case before us which could support the conclusion that there was a negligent failure by the defendant's agent, Dickson, to notify the plaintiff, before he went into the building, of the existence of explosive gasoline in it. It does not appear either that he knew of the exact cause of the explosion (although he may have suspected it), or that he had any knowledge or reason to know, after the first explosion, that unexploded gasoline remained in the cellar. In addition, according to the plaintiff's evidence, Dickson does not seem to have been present when the plaintiff arrived and entered the building, and the explosion which injured him occurred within two or three minutes of his entry. Neither time, the opportunity nor the knowledge was, therefore, shown to have been possessed by Dickson which would put upon him the duty of notifying the plaintiff of his danger. This is a

simple case of a fireman being injured by an incident of a fire which he was endeavoring to put out in a gasoline station; and for the reasons stated we are of opinion that the plaintiff has shown no right of action against the defendant and that we must render a verdict in its favor.

We, therefore, make the following findings of fact in the case:

### Findings of fact.

1. The defendant was negligent in setting fire to the premises.

2. The plaintiff, a city fireman, entered the premises in the performance of his duty as such fireman and as such was not guilty of negligence.

3. The plaintiff was damaged in the sum of $3500.

The court further reaches the following

### Conclusions of law.

1. The plaintiff assumed the risk of the dangers incident to the extinguishment of the fire for which purpose he entered the premises.

2. The defendant is not liable to the plaintiff for the damages suffered by him in connection with his efforts to put out the fire.

Accordingly, verdict is now entered in favor of the defendant.