## McCOWAT–MERCER PRINTING CO. v. TAYLOR.

### No. 8394.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1940.

W. G. Timberlake and John Heiskell, both of Jackson, Tenn., (Barham & Heiskell and W. G. Timberlake, all of Jackson, Tenn., and Winchester & Bearman, of Memphis, Tenn., on the brief), for appellant.

H. C. Murchison, of Jackson, Tenn. (Joe C. Davis, of Lexington, Tenn., and David P. Murray and Murchison & Manheim, all of Jackson, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

McCowat-Mercer Printing Company appealed from a judgment against it in favor of Perry Taylor, administrator, for the death of his intestate, Floyd Taylor, who fell through the shaft of an elevator in appellant's building and was killed.

Appellant challenged the denial of a directed verdict upon the grounds,—(1) that the undisputed evidence proved that Taylor was a licensee upon its premises and that there was no evidence that appellant wilfully or wantonly caused his death, and (2) that Taylor's contributory negligence was the proximate cause of his death.

Appellant owned a four-story building in Jackson, Tenn. Portions of the first, second and third floors were rented, but appellant occupied the fourth in connection with its printing business. The entrance to the building was from Church Street and consisted of double doors opening into a vestibule in which both a stairway and an elevator were located. The vestibule was about 8 feet, 9¾ inches in width. From the entrance the stairway was to the right and about 2 feet 9 inches therefrom. The elevator was on the left of the stairway and was about 10 feet from the entrance. The floor of the shaft was of concrete. The entrance doors were left open day and night and on the night in question, April 18, 1938, the vestibule, although furnished with lighting fixtures, was unlighted. During normal business hours the elevator was operated by a regular employee. The elevator proper had no doors but the shaft was enclosed by a metal grating and the door to the shaft was likewise made of grating.

E. P. Collier, an employee of appellant, worked on the fourth floor. His hours were from 5 P. M. to 1 A. M. There is evidence tending to show that it was a common practice of Collier and other employees to order food and drink brought to them at their working place and that Holcomb, the plant superintendent, knew of and acquiesced in the custom. The custom not only provided for the comforts of the employees but it was beneficial to appellant in that it saved the employees from leaving their posts during work hours.

On his way to work on the night in question, Collier stopped at the Dixie Castle, an eating place, about a block from appellant's building and ordered that a bottle of milk and a piece of pie or cake be delivered at his working place at 9 o'clock, but those in charge overlooked the order and failed to make the delivery at the specified time. On that night Holcomb, and Phillips, an employee, were working with Collier. About 9 o'clock Collier took Holcomb to the ground floor in the elevator and returned

it to the fourth floor, where it remained. Holcomb went to the Dixie Castle and asked why Collier's order had not been delivered and Floyd Taylor, the intestate, by direction of the manager of the restaurant, left immediately carrying the milk and cake in his hands, in separate packages, which were to be delivered to Collier on the fourth floor of appellant's building. When he failed to return the manager of the restaurant sent Woodward, another employee, to ascertain what had happened. Woodward went to the building and found the vestibule unlighted, the elevator door open and Taylor, still breathing, lying at the bottom of the shaft with the packages beside his body. He died soon after his removal from the pit.

We think under the rule set forth in Shearman and Redfield on Negligence, 6th Ed., § 706, and approved in Chattanooga Warehouse & Storage Co. v. Anderson, 141 Tenn. 288, 294, 210 S.W. 153, Taylor was impliedly if not expressly an invitee upon appellant's premises and it was appellant's duty to use ordinary care and prudence to see that its premises were reasonably safe for his visit; and whether as a matter of fact such care had been taken was a question to be determined by the jury. Rosenbaum v. Shoffner, 98 Tenn. 624, 634, 40 S.W. 1086.

The opinion in the Rosenbaum case cited with approval Bennett v. Louisville & N. Railroad Co., 102 U.S. 577, 580, 26 L.Ed. 235, wherein it was said: " * * * The last-named author [Cooley on Torts] says that when one 'expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.' "

The jury found that the door to the shaft was open when Taylor entered the unlighted vestibule. We think there was substantial evidence from which the jury might reasonably draw such an inference.

The elevator had been in use for more than fifteen years. The door in the shaft, 2 feet, 2 inches wide, was of the "sliding" type, operated by a roller and groove mechanism. Its lock had been "out of fix" for at least six years and was not used; but on the inside was a "latch" designed, when the door was closed, to catch over a hook and hold it closed until the latch was lifted. There is evidence, however, tending to show that frequently the latch would not catch and the door would bounce open a distance of from 18 to 24 inches and that it was then necessary to repeat the operation until the latch caught.

Appellant contends that it was entitled to a directed verdict upon the testimony of Holcomb and Collier that Collier closed the door when Holcomb left the elevator, but this testimony was evidently discredited in the minds of the jury by the cross-examination of these witnesses, wherein Collier testified, "I couldn't positively swear I absolutely know that the latch caught" and wherein Holcomb answered "No, sir" to the question, "Do you know whether it" (the door) "was latched?"

The finding of the jury has substantial support and we think it follows that Taylor's death was proximately caused by the negligence of appellant and that the verdict must be upheld.

Appellant asserts that it was entitled to a directed verdict upon the ground that Taylor's contributory negligence caused his death but this contention is not supported by conclusive proof. There is evidence that one standing in front of the door could open it by inserting his finger through the grating and lifting the latch, but the proposition that Taylor did such a thing rests in surmise and conjecture only. It is negatived by evidence that Taylor, twenty years of age, had had no previous experience with the operation of the elevator. He had only on two or three previous occasions used it to carry food to the fourth floor when it was operated in business hours by its regular conductor. A jury would have difficulty in concluding that he used his hands or fingers to open the door in the face of the strong inference that the packages, found beside him in the elevator shaft, must have been in his hands when he fell.

Error is assigned upon the action of the court in granting certain requested instructions to the jury made by appellee and in declining to grant certain other requests of appellant. It would serve no worth while purpose to set out these requests in extenso. We think that those of appellee embodied the law as applicable to the evidence; that those of appellant were not technically correct and their de-

nial affected no substantial right of appellant.

There was no abuse of discretion in denying the motion for a new trial.

The judgment is affirmed.